ARCHIMEDES C. DICKSON, Appellant, *v.* THE PEOPLE, on the relation of George T. Brown, Appellee.

APPEAL FROM MORGAN.

A director of the State institution for the education of the deaf and dumb, appointed by the Governor with the advice of the Senate, holds an "office of honor," within the meaning of the twenty-ninth section of the third article of the constitution, which will be vacated by an acceptance of an appointment as Marshal by authority of the United States.

A judgment of ouster upon a proceeding by quo warranto will not be reversed, because formal leave to file the information had not been first obtained, if it appears that there was an acquiescence in the proceeding.

A director in the same institution (for the education of the deaf and dumb) has sufficient interest to entitle him to make the information in such proceeding.

DICKSON, the appellant, in January, 1853, was appointed by the Governor and Senate of Illinois, director for the Illinois

Institution for the Education of the Deaf and Dumb, and entered upon the duties of said appointment.

Subsequently to this appointment and acceptance, the said Dickson was appointed, by the President of the United States, Marshal for the southern district of Illinois, under the laws of the United States, and said Dickson accepted and entered upon the duties of said office.

George T. Brown, in October, 1855, filed against said Dickson, in the Circuit Court of Morgan county, an information, the object of which was to remove him from said appointment as director of said institution, averring that the two appointments aforesaid are incompatible, and that the acceptance of the office of marshal, was a virtual surrender of the said trust in said institution.

To sustain this information, the following clause in our State constitution is relied on : "No judge of any court of law or equity, secretary of State, attorney general, attorney for the State, recorder, clerk of any court of record, sheriff or collector, member of either house of Congress, or person holding any lucrative office under the United States or of this State, (provided that appointments in the militia or justices of the peace, shall not be considered lucrative offices,) shall have a seat in the General Assembly; *nor shall any person holding any office of honor or profit under the government of the United States, hold any office of honor or profit under the authority of this State.*"

The information alleges the appointment of Dickson to said directorship in said institution, but does not allege the same to be an office of honor or profit under the authority of the State of Illinois. The information does not show any interest in Brown, the relator, in said office or in the question made by said information.

Dickson was summoned and appeared in the Circuit Court, and made a motion to quash the writ and proceedings in said case, for the reasons following :

1st. That no affidavit was filed as to the truth of the said information ; the charge against Dickson being in the nature of a criminal charge in favor of the people, for violating a criminal law of the State.

2nd. No notice was given to said defendant of the time and place of asking leave for suing out said writ of *quo warranto* to show cause against the leave to do so.

3rd. Said writ was unaccompanied by a copy of said information, and,

4th. Said writ and proceedings were insufficient to enable said relator to call upon said Dickson to answer.

This motion was overruled by the court, and the defendant ordered to answer said information.

The defendant then filed a general and special demurrer to said information, assigning, as a special cause of demurrer, that said office of director is not an office of honor or profit in the spirit and meaning of the State constitution.

The court, Woodson, Judge, presiding, at October term, 1855, of the Morgan Circuit Court, overruled this demurrer, and rendered a judgment upon said information that Dixon was guilty of illegally intruding himself into said office of director, and that he be ousted therefrom and pay the cost.

Dickson took an appeal to this court, and assigns all those opinions and decisions of the Circuit Court for error.

M. McConnel and J. Grimshaw, for Appellant.

W. Brown and D. A. Smith, for the Relator.

Scates, C. J. On the 17th of February, 1853, plaintiff was duly appointed by nomination of the governor, and with the advice and consent of the Senate, a director of the Illinois institution for the education of the deaf and dumb, for six years, and on the —— day of March, 1855, he was duly appointed United States Marshal for the southern district of Illinois; and the only question is the incompatibility of the two offices under the provisions of Section 29, Article 3, of our State constitution.

The court is of opinion that the directorship of the institution is an office of honor, within the meaning of that section, and that plaintiff vacated it by his acceptance of the marshalship.

The section provides that "no judge of any court of law or equity, secretary of State, attorney general, attorney for the State, recorder, clerk of any court of record, sheriff or collector, member of either house of Congress, or person holding any *lucrative* office under the United States or of this State—provided that appointments in the militia, or justices of the peace, shall not be considered lucrative offices—shall have a seat in the General Assembly ; nor shall any person holding any office of *honor* or *profit* under the government of the United States, hold any office of honor or profit under the authority of this State."

To comprehend the true sense of the convention in what they mean by "office" here, we must look to the whole instrument, and to circumstances, to ascertain the evil or danger to be guarded against. It is founded on revealed truth: "no man can serve two masters; for either he will hate the one, and love the other; or else he will hold to the one, and despise the other," (Math. 6 : 24) ; and confirmed by observation and expe-

13

rience. Therefore to prevent a sacrifice of one of two interests under the same authority, the powers of the government are divided into three departments—and " no person, or collection of persons, being one of these departments, shall exercise any power properly belonging to either of the others." (Article 2, Secs. 1, 2.) It is intended to cut up the evil by the roots, without any speculation or experiment as to what might be the tendency of certain powers or places which seem, or might seem, to offer no inducement to abuse.

But there are offices and powers necessarily conferred and exercised for the public good, not strictly assignable to either department of the government, and such is the one before us, and such was intended to be reached and provided for in the 29th section referred to. This view is further strengthened by other provisions. Article 4, Sec. 3, makes the governor ineligible to any other office until after the expiration of the term for which he was elected, nor shall he receive any emolument from the United States during the same time. (Sec. 5.) He shall appoint to all offices created by the constitution or law, when not otherwise provided for, (Sec. 12,) and might appoint himself to this directorship, if it be not an office within the constitution.

It is objected to this construction of the constitution, that if such unimportant offices as these, are included within the meaning of the constitution, it will subject the incumbent to impeachment under the 26th section of the 4th article, which declares that the governor and all other civil officers, shall be so liable, and it never could have been intended to use so dignified and expensive a tribunal and mode of trial for every little misdemeanor, in every petty office. While the constitution authorizes this mode of trial, it does not enjoin it mandatorily, but other modes may also be adopted, according to the dignity of the offender, and the degree of the offence.

" Every person who shall be elected or appointed to any office of profit, trust, or emolument, civil or military, legislative, executive, or judicial," shall take the oath against dueling, (Sec. 26, Art. 13); and any person who shall fight a duel, send or accept a challenge, or aid or abet in fighing a duel, shall be deprived of the right of holding any office of honor or profit, (Sec. 25, Art. 13); and finally, " no person " shall be elected to *any office*, civil or military, who is not a citizen of the United States, and who shall not have resided in this State one year next before the appointment. (Art. 6, Sec. 7.) These various provisions are adverted to, to show that there was design in varying the terms of qualification in different provisions. The governor is ineligible to *any* other office, and persons not citizens to *any office*.

The duelist is disqualified from any office of *honor* or *profit*, and every person shall take an anti-dueling oath, as a qualification into any office of *profit, trust,* or *emolument,* civil or military ; yet justices of the peace and militia offices, are not to be deemed *lucrative,* in the same section which excludes from double offices of either honor or profit.   (Sec. 29, Art. 3.)   It may not need an argument to show that the terms offices of honor and offices of trust are used in a synonymous sense in the sections disfranchising the duelist and prescribing the anti-dueling oath ; and in the latter, profit and emolument will leave the sense of the latter'term, as merely enlarging the sense of the former, to all offices having pay or perquisites, whether profitable or not.

And indeed so I must understand the terms in the 29th section, *lucrative* and *profit*.   The former only disqualifies for a seat in the General Assembly, and under the former constitution (Art. 2, Sec. 25) the office of postmaster was excepted from lucrative offices.   But an office of profit, whether lucrative, or profitable, or not—shall not be held under one government, and another of profit, or even mere honor, under the other government.

There are no fees, perquisites, profits or salary ; it is an honorable trust that is confided to the directory of this institution. Yet we are not able to say that it is not an office, but merely an employment.   For this distinction is taken, and it is a sensible one, between an office and mere employment on a contract, express or implied.   Large sums of money are placed under the charge of these directors, to be disbursed in the maintenance and education of the deaf and dumb.   Although the institution was chartered, and commenced as a private eleemosynary one, it has since become a public corporation, endowed by biennial appropriations from the treasury, from taxes expressly levied for this purpose.   It is governed by this board of directors, appointed by the Governor and Senate, and who hold their offices for six years.   It is an office of honor, and if not of great distinction, it is yet one of a high, benevolent, and important trust, and which, if administered in the liberal and philanthropic spirit in which it has been endowed by the public, will accomplish a great deal of good by relieving the misfortunes of those who so imperiously demand our aid, and deserve the warmest. sympathies of our hearts, although they cannot audibly appeal for the one, nor hear the kindliest expressions of the other.

A decision or two may aid to throw some light upon a subject as yet but little discussed.

In the *Commonwealth* v. *Binns*, 17 Serg. and Raw. R. 219, the selection of a newspaper, to print the laws of the United States, was held not to confer an office upon the editor, and was

not incompatible with the office of alderman of the city of Philadelphia, which was held by the editor of the paper selected. It was regarded as a contract for service, and agencies and employments are not within the prohibitive meaning of the constitution and law.

The same distinction was made in an advisory opinion by two of the justices of the Supreme Court of Maine, in answer to an application of the Governor, as to the power to appoint a senator or representative of the same legislature which directed it, an agent for the preservation of timber on the public lands of the State, and other purposes.

Such an agency is a mere employment, and not an office within the meaning of the constitution. 3 Maine R., Appendix, 481. So again in *The State of Delaware* v. *The Wilmington City Council,* 3 Harring. R. 294; the office of treasurer of a public municipal corporation, (such as the city of Wilmington,) is not " a civil office " in that State, in the sense of the constitution, which disqualifies a clergyman from holding civil office. In their arguments, both the justices in Maine, and the court in Delaware, use expressions which are broad enough to exclude the office before us. For in the former, they seem to regard " offices in the constitutional sense, as confined to those to which a portion of the general sovereign power of one of the three departments of the government, is confided, and in the latter, that when exercised through a corporation, the offices are " corporate," and not " civil," in the sense of the constitution. This all may be true to a great extent, but is not universal, nor invariable. Corporations may be formed for the very purpose of exercising some of the important administrative functions of government, and the offices created in it, may possess all the powers for such object, that could be conferred on an independent civil office, and in its administration of the public authority be liable to all the bias, prejudice, corruption and abuse, intended to be provided against. So again an office may be created and an officer appointed to perform important public duties—important in exercising the administrative functions of government— and yet it may be difficult, strictly, to define and assign his office, powers and duties, to any particular department of the government. And this may be true, although it may be easy to exclude them from the legislature and judiciary, and to show that authority must proceed from the former, yet they may be such as do not seem to belong to, or readily assimilate with, the executive department.

In *The Commonwealth* v. *Dallas,* 3 Yeates R. 303, 314, it was held that the Recorder of the city of Philadelphia was a judge of a court of record, but was not such a judge as was

intended by their constitution, and that office was not incompatible with the office of district attorney of the United States.

After vibrating between two opinions, and with hesitation, the court arrived at the conclusion, that the constitution intended only such judges as were distinguished by the constitution, the existing laws of the State, and the general language of the country. The case can form no precedent out of the State, nor will it throw much light upon the discussion of principle in its general application to offices, as that was not the term in their constitution.

The formal objection in relation to previous leave to file this information, we think insufficient to reverse this judgment. Leave by acquiescence will not be too strictly sanctioned when public redress is sought. The relator, as director of the same board, has shown sufficient interest to entitle him to make this information.

We are not called upon in this case, and shall not discuss the grade of " offices," with a view to fix any limit to the meaning of the constitution. This we think falls within the meaning and the mischief.

*Judgment affirmed.*

----

SKINNER, J., DISSENTING. By an act of the legislature, approved February 23rd, 1839, certain persons were created a body corporate, by the style of " the president and directors of the Illinois asylum for the education of the deaf and dumb," with perpetual succession, power to contract, sue and be sued, have a common seal, purchase, hold and convey real estate, for the purposes of the corporation, and so forth. The legislature expressly reserved the power to alter, modify and change the charter or act of incorporation at pleasure, provided for private donation and public appropriation to establish and sustain the institution, and for the administration of the affairs of the institution, by a board of directors and their successors. Laws of 1839, 162. The legislature, by an act approved February 3rd, 1849, changed the name of the corporation, the term of office of the board of directors, provided for their appointment biennially, by the Governor and Senate, and for the filling of vacancies in the board, by the board of directors. Laws of 1849, 93.

The constitution of this State declares " that no person holding any office of honor or profit under the government of the United States, shall hold any office of honor or profit under the authority of this State."

The record admits that the defendant has been appointed, by

the government of the United States, marshal of the southern district of Illinois, since his appointment as one of the board of trustees of this institution, and has entered upon the discharge of the duties of the office.

The institution is of a public character, for its uses and objects are public, but the corporation, through which the affairs of the institution are administered, is clearly a private corporation, of an eleemosynary character. Public corporations are such as are established for governmental and municipal purposes, and relate generally to communities, as counties, cities, towns, &c., and, perhaps, such as are of a strictly public character, and where the government is the sole founder and has the *whole* interest. Private corporations, although established, wholly or in part, for public purposes, are artificial persons, created by law, endowed with certain powers of maintaining such artificial existence, of performing acts, as persons, and incurring legal liabilities. In such corporations, private interests are in some manner involved, by voluntary donations, by the holding of stock, or the like; although the government may also be interested, or be the principal founder and supporter of the same, by public appropriation. If the corporation is not created for the administration of political power, or for purposes strictly incidental thereto, without the intervention of individual interests, by donations or otherwise, the corporation, although for public purposes, is a private corporation in law. Angel & Ames on Corp. 9 ; ibid., Chap. 1, Sec. 1, 2 and 3 ; *Dartmouth College* v. *Woodward*, 4 Wheaton 668 ; *Allen* v. *McKeen*, 1 Sum. (Cir. Court) R. 276 ; *U. S. Bank* v. *Planter's Bank*, 9 Wheaton 907 ; *Bank of South Carolina* v. *Gibbs*, 3 McCord 377 ; 2 Kent's Com. 275, 276.

In this case, the act of incorporation contemplates donations by private persons, provides for obtaining the grounds, upon which to erect the buildings of the corporation, by individual bounty, and confers all the necessary powers and franchises characteristic of private corporations aggregate. Nor can it be contended that this corporation may not incur legal liabilities, that judgments may not be obtained against it, founded upon such liabilities and satisfaction obtained out of the corporate property.

All private corporations emanate from the sovereign power of the State, but they have a separate legal existence, may act as individuals, to the extent of the powers conferred by the law of their creation, and those lawfully administering the affairs of such corporations are, in no proper sense, municipal officers, or persons holding office under authority of the State. The trustee, in this case, however, appointed, is an officer of the corporation,

having no powers appertaining to the political government of the State — an officer of the *corporation*, and *not* of the government.

For the reasons stated, I am unable to concur in the opinion of the majority of the court; and I purposely avoid intimating any opinion as to the extent of the operation of the clause of the constitution, before quoted, beyond the necessities of the case presented by the record.