(No. 42302.—

Robert P. Livingston, Appellant, *vs.* Richard B. Ogilvie, Governor, *et al.,* Appellees.

*Opinion filed July 10, 1969.*

10

SCHAEFER and WARD, JJ., dissenting.

PRICE, CUSHMAN, KECK & MAHIN, of Chicago, (JAMES T. OTIS and JOHN R. J. BAER, of counsel,) for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, (FRANK J. MCGARR, Assistant Attorney General, of counsel,) for appellees.

WILBUR S. LEGG, of Chicago, for the Chicago Bar Association, *amicus curiae.*

Mr. JUSTICE HOUSE delivered the opinion of the court:

This is a taxpayer's declaratory judgment action challenging the constitutionality of Public Act 76—40, which provides for a constitutional convention and makes appropriations for its conduct. The Governor and certain other State and political officers constituting the State Electoral Board are parties defendant. The circuit court of Sangamon County entered judgment on plaintiff's motion for judgment on the pleadings, denied plaintiff's prayer for an injunction restraining implementation of the Act and found it constitutional in all respects except a provision permitting certain public officials to serve as members (delegates) of the constitutional convention. Plaintiff appeals from the judgment, except as to the public-official holding, and defendants cross-appeal on that point.

The principal issues presented on this appeal have been narrowed to the scope of the power of the General Assembly, particularly with respect to qualifications of delegates, whether they can be nominated and elected on a nonpartisan basis, and whether the election of delegates from the provisional State senatorial districts fixed by this court in *People ex rel. Engle* v. *Kerner* 33 Ill.2d 11, is unconstitutional under the one-man, one-vote doctrine.

Section 3 of the Act provides: "The qualifications of members shall be the same as that of members of the Senate, except that any person who otherwise qualifies but is a member of the General Assembly or holds any other elective or appointive office under the Constitution or laws of this State may also serve as a member of the Convention."

Section 1 of article XIV of the constitution reads in part: "Whenever two-thirds of the members of each house of the general assembly shall, by a vote entered upon the journals thereof, concur that a convention is necessary to revise, alter or amend the constitution, the question shall be submitted to the electors at the next general election. If a majority voting at the election vote for a convention, the

general assembly shall, at the next session, provide for a convention, to consist of double the number of members of the senate, to be elected in the same manner, at the same places, and in the same districts. * * * The qualification of members shall be the same as that of members of the senate, and vacancies occurring shall be filled in the manner provided for filling vacancies in the general assembly."

Plaintiff contends that this constitutional grant is a limitation on the power of the General Assembly to fix any qualification of delegates and that neither members of the General Assembly nor public officials can constitutionally serve. On the other hand, defendants point out that there is no provision for exclusion of members of the General Assembly or public officials whatsoever, and that section 3 of the Act is a legislative clarification of the constitutional qualification provisions.

A strong presumption of constitutional validity attaches to legislature enactments. *Board of Library Directors* v. *City of Lake Forest,* 17 Ill.2d 277, and cases therein cited.

Section 3 of article IV of the constitution provides: "No person shall be a senator who shall not have attained the age of twenty-five years, or a representative who shall not have attained the age of twenty-one years. No person shall be a senator or representative who shall not be a citizen of the United States, and who shall not have been for five years a resident of this state, and for two years next preceding his election a resident within the territory forming the district from which he is elected. No judge or clerk of any court, secretary of state, attorney general, state's attorney, recorder, sheriff, or collector of public revenue, member of either house of congress, or person holding any lucrative office under the United States or this state, or any foreign government, shall have a seat in the general assembly: *Provided,* that appointments in the militia and the office of notary public and justice of the peace, shall not be con-

sidered lucrative. Nor shall any person holding any office of honor or profit under any foreign government, or under the government of the United States, (except postmasters whose annual compensation does not exceed the sum of $300,) hold any office of honor or profit under the authority of this state."

There is no question that the age, citizenship and residency qualifications for senator contained in the first two sentences of section 3 are qualifications for delegates under article XIV. The question is whether the last two sentences of section 3 of article IV constitute a qualification for senator.

Section 25 of article II of the constitution of 1818 provided: "No judge of any court of law or equity, secretary of state, attorney-general, attorney for the state, register, clerk of any court of record, sheriff or collector, member of either house of congress, or person holding any lucrative office under the United States or this state, (provided that appointments in the militia, postmasters or justices of the peace shall not be considered lucrative offices,) shall have a seat in the general assembly: nor shall any person holding an office of honor or profit under the government of the United States, hold any office of honor or profit under the authority of this state." (Rev. Laws of 1833, pp. 37, 38.) This identical provision became section 29 of article III of the constitution of 1848 and with minor changes is now the last two sentences of section 3 of article IV of the constitution of 1870.

*Dickson* v. *People ex rel. Brown*, 17 Ill. 191, involved a director of the Illinois Institution for the Education of the Deaf and Dumb who later accepted appointment as a United States Marshal. The court treated the provision in question (then section 29 of article III of the constitution of 1848) as a prohibition against holding incompatible offices by the same person at the same time. The court found the offices to be incompatible under the constitutional prohibition and

held that Dickson had vacated his office of director by accepting the office of United States Marshal.

In *People ex rel. Myers* v. *Haas,* 145 Ill. App. 283, a State senator was later elected clerk of the municipal court of Chicago. The court found that the two offices were incompatible under section 3 of article IV and held that acceptance of the office of clerk was an *ipso facto* resignation of the office of senator.

In *Fekete* v. *City of East St. Louis,* 315 Ill. 58, the city attorney of East St. Louis later accepted a commission in the United States Army. The court found these offices incompatible under section 3 of article IV and held that his acceptance of the commission was a constructive resignation of his office of city attorney.

In *People ex rel. Cromer* v. *Village of Maywood,* 381 Ill. 337, *cert.* den. 218 U.S. 783, this court again held that acceptance of a second incompatible office automatically vacates the first office and described the constitutional prohibition against simultaneously holding incompatible offices as self-executing.

The rationale of these holdings is that the last two sentences of section 3 of article IV are merely a prohibition against holding two offices at the same time as described therein and is not a bar to eligibility for senator. Mechem supports that conclusion. His example of a provision which requires only vacation of the first office upon acceptance of another incompatible office is almost identical to section 3 of article IV. "Where the Constitution provides that no person holding any lucrative office under the State, shall be a member of the general assembly, one who accepts an election to the assembly while holding the office of circuit judge vacates the latter office * * *." Mechem, Public Offices and Officers, sec· 431 (3rd ed. 1890.)

In discussing provisions which bar eligibility, Mechem states: "Thus, as in the Constitution of California, it is sometimes declared that 'No person holding any lucrative

office under the United States or any other power shall be eligible to any civil office of profit under this State;' or, as in Indiana 'that no person elected to any judicial office shall, during the term for which he was elected, be eligible to any office of trust or profit under the state, other than a judicial one' * * *" Mechem, Public Offices and Officers, sec. 76 (3rd ed· 1890).

We hold that the office holders covered by section 3 of article IV are not ineligible for the office of senator and consequently are not ineligible as delegates unless made ineligible by some other provision of the constitution. There are several such provisions as hereafter pointed out.

Section 4 of article IV is a true ineligibility provision. It provides: "No person who has been, or hereafter shall be, convicted of bribery, perjury, or other infamous crime, nor any person who has been or may be a collector or holder of public moneys, who shall not have accounted for and paid over, according to law, all such moneys due from him, shall be eligible to the general assembly, or to any office of profit or trust in this state." A person who is ineligible "to the general assembly, or to any office of profit or trust in this state" under this section of the constitution would be ineligible for State senator and consequently ineligible to be a delegate.

Section 24 of article IV has an ineligibility provision that an officer who has been impeached is disqualified from holding any office of honor, profit or trust under the government of this State. Again, the person could not be a State senator or a delegate.

Section 5 of article V contains an ineligibility provision. "Neither the governor, lieutenant governor, auditor of public accounts, secretary of state, superintendent of public instruction nor attorney general shall be eligible to any other office during the period for which he shall have been elected." Since these officials are ineligible to be a senator they are also ineligible under article XIV to be a delegate.

Thus, those persons who have the qualifications for senator under the first two sentences of section 3 of article IV, and are not ineligible for senator under sections 4 and 24 of article IV or section 5 of article V, are qualified and eligible delegates to the constitutional convention. There remains the question, however, of whether office holders, other than those specifically made ineligible by sections 4 and 24 of article IV and section 5 of article V, covered in the last two sentences of section 3 of article IV would be holding an incompatible office by accepting membership in the constitutional convention and thereby vacate their prior office.

While the employment or office aspects of membership in the constitutional convention could be debated at length, we think it is sufficient to point out that such membership does not meet the constitutional definition of an office. Section 24 of article V provides: "An office is a public position created by the constitution or law, continuing during the pleasure of the appointing power, or for a fixed time, with a successor elected or appointed. An employment is an agency, for a temporary purpose, which ceases when that purpose is accomplished."

Furthermore, the records of the Constitutional Convention which drafted the present constitution indicate that the members did not intend membership in a future constitutional convention to be incompatible with the offices covered in section 3 of article IV. A proposed resolution for consideration of the Committee on the Legislative Department provided that "no judge of any court of law or equity, Secretary of State, Attorney General, county attorney, recorder, clerk of any count of record, sheriff or collector of the public revenue, member of either House of Congress, or person holding any lucrative office under the United States or this State, or any foreign government, shall have a seat in the General Assembly, *or in any Convention called for the purpose of revising, altering or amending the Constitu-*

*tion of the State,* Provided * * *." (Emphasis added.) Debates and Proceedings of the Illinois Constitutional Convention, 1869-70, 7-49 (Springfield 1870).

However, officeholders covered by this provision, including members of the General Assembly, were sitting in this Constitutional Convention and sat in prior conventions. There was sentiment in the 1869-70 Convention to adhere to the policy of the constitution of 1848 which contained no qualifications for delegates. See Debates and Proceedings for the Illinois Constitutional Convention, 1869-70, 1309-1312 (Springfield 1870).

As finally adopted the above italicized portion of the proposed resolution indicates that the convention of 1869-70 did not consider the position of delegate to a future constitutional convention to be incompatible with the offices covered by section 3 of article IV.

"* * * The right to hold office is a valuable one and its exercise should not be declared prohibited or curtailed except by plain provisions of the law. And the rule that provisions imposing disqualifications should be strictly construed is applicable to those which prohibit dual office holding. They should not be extended by implications beyond the office or offices expressed or to persons not clearly within their meaning. In other words, they should be construed in favor of eligibility.

"The prohibition against one person holding more than one office at the same time has reference to officers, as distinguished from positions in the public service that do not rise to the dignity of offices." 42 Am. Jur., Public Officers, sec. 61.

We hold that the offices covered by the last two sentences of section 3 of article IV, including the "lucrative offices" of representative and senator are not incompatible with membership in the constitutional convention, unless made incompatible by some other provision under the constitution.

Section 16 of article VI provides: "Judges shall devote

full time to their judicial duties, shall not engage in the practice of law or hold any other office or position of profit under the United States or this State or any municipal corporation or political subdivision of this State, and shall not hold office in any political party. Compensation for service in the State Militia or the armed forces of the United States for such periods of time as may be determined by rule of the Supreme Court shall not be deemed 'profit'." This language again signifies a prohibition against simultaneously holding incompatible offices or positions of profit under the United States or of this State and is not an ineligibility provision. See *People ex rel. Nachman* v. *Carpentier,* 30 Ill.2d 475.

The provision that "Judges shall * * * not * * * hold any other office or *position of profit* under * * * this State * * *" (emphasis added) is broad enough to make the office of judge incompatible with the position of delegate. The fact that section 9 of the Act provides that public officials shall receive no compensation for their convention services while they remain public officials does not make such membership, which is a position of profit, not a position of profit. Under the authority of cases previously cited a judge is eligible to become a delegate but if he becomes a delegate he vacates his office as judge.

It is argued that section 5 of the Act violates article XIV of the constitution. Section 5 prohibits partisan participation and forbids the use of political party designations in the election of members of the constitutional convention. Plaintiff's theory is that the "in the same manner" provision of article XIV requires that the election of members to the convention must be the same in every particular as the statutory provisions now in force for the election of senators. Proceeding on this theory the complaint attacks 16 various provisions of the Act which do not exactly correspond with procedures for the nomination and election of senators.

To support his interpretation of the "in the same man-

ner" provision, plaintiff has gone into the historical background of prior constitutional conventions and shown them to have been organized and operated on partisan lines. (See Cole, The Constitutional Debates of 1847 (Vol. XIV, Illinois Historical Collections, Springfield, 1919); Cole, The Era of the Civil War, III Centennial History of Illinois, 267 (Springfield, 1919); Bogart and Thompson, The Industrial State, IV Centennial History of Illinois, 4 (Springfield, 1919); 1 Debates of the Constitutiinal Convention—Illinois 4, 50-43, (1870).) From this he concludes that the framers of our present constitution intended future conventions likewise to be organized and operated on a partisan basis.

Defendants and *amicus curiae* both take the position that "in the same manner" means that the delegates shall be elected in the same manner as the *constitution* provides for the election of senators. They concede that the Act does not comply with all the statutory provisions for the election of senators but they argue that the Act does comply with all the constitutional provisions for the election of senators. *Amicus* suggests that the prohibition against partisan participation was a recognition by the legislature of the generally adverse experience of prior constitutional conventions organized and conducted along party lines. See Tomei, "Con Con at the Crossroads: Convention of the Parties or of the People?" 50 Chicago Bar Record 113 (Dec. 1968).

Article XIV provides that members of the convention be elected "in the same manner, at the same places, and in the same districts" as senators. The constitutional provisions relating to the *places* and *districts* of election for senators specifically refer to statutory implementation, (Ill. Const. art. IV, secs. 2, 6, 7 and 8,) and the general law implementing these constitutional provisions are applied to the election of delegates by the Act. On the other hand, the constitutional provisions relating to the *manner* of electing senators do not refer to statutory implementation but simply require

that they "be elected by the people" (art· IV, sec. 1), that the election be "free and equal" (art. II, sec· 18), that the voter meet certain age, citizenship and residence requirements (art. VII, sec. 1) and that "all votes shall be by ballot." (Art. VII, sec. 2.) The Act meets all of these constitutional requirements.

Plaintiff argues that the elimination of the party primary nominating process is a major deviation from existing election practices. Party primaries are not, of course, a constitutional prerequisite to the election of candidates to public office. *People ex rel. Lindstrand* v. *Emmerson,* 333 Ill. 606; *People ex rel. Baird* v. *Small,* 335 Ill· 283; *Foreen* v· *Stratton,* 9 Ill.2d 618; *Telcser* v. *Holzman,* 31 Ill.2d 332.

Plaintiff also contends that because partisan participation and political party designations are provided in the Election Code for senator they must also be used for the election of delegates. We are of the opinion that "in the same manner" means only that the election provisions shall be based on the basic constitutional requirements. Other jurisdictions have so held. (*Baker* v. *Moorhead,* Neb. 811, 174 N.W. 430; *In re Opinion of the Justices,* 76 N.H. 586), 79 Atl. 29.) Under our holding the legislature need not, in the Act calling the convention, provide for partisan participation and the use of political party designation in the election of delegates.

It is next argued that under the fourteenth amendment to the Federal constitution all persons of this State are entitled to equal representation in the constitutional convention and that section 2 of the Act will deny this right. It provides: "The Convention shall consist of 116 members. Two members shall be elected in and from each provisional state senatorial district provided by the Illinois Supreme Court in its decision in People ex rel. Engel v. Kerner, 33 Ill·2d 11." Plaintiff asserts that under the recent Supreme Court cases of *Kirkpatrick* v. *Preisler,* 394 U.S. 165, 89 S. Ct. 1225, 22 L. Ed. 2d 519, and *Wells* v. *Rockefeller,*

394 U.S. 542, 89 S. Ct. 1234, 22 L. Ed. 2d 535, the provisional State senatorial districts established in *Kerner* contain unacceptable population variances and that to elect delegates from these districts will violate the principle of equal representation for equal numbers of persons.

The Supreme Court has not passed directly on the question of whether the "one man, one vote" or "equal representation for equal numbers of persons" principle is applicable to the election of delegates to a State constitutional convention where, as here, the only authority of the delegates is to propose amendments to be submitted to a vote of the people of the State at large. This issue was presented to the Supreme Court of Tennessee in *West v· Carr* (1963), 212 Tenn. 367, 370 S.W. 2d 469, and to the Supreme Court of Pennsylvania in *Stander* v. *Kelly* (1969), 433 Pa. 406, 250 A. 2d 474, and each of those courts held that the one-man, one-vote principle does not apply.

In *West* it was argued that "Baker v. Carr, 369 U.S. 186, 82 S. Ct. 691, 7 L. Ed. 2d 663, held unconstitutional Tennessee's Act of 1901, which apportioned members in its House of Representatives upon the same basis as this 1962 Act apportions delegates to the constitutional convention; that membership in the convention is as important as membership in the House; and that an apportionment which is void as to one must be void as to the other." (370 S·W.2d 469, 472.) In rejecting this argument, which is essentially that advanced by plaintiff in this case, the Tennessee court stated: "* * * neither the delegates nor the convention can take any final action, but are strictly limited to the subjects specified in the call, and as to them, can only make proposals which can have no effect unless and until they are ratified in another election, by a vote of the people of the State at large, where every qualified voter will be entitled to vote and every vote given the same weight." (370 S.W.2d 469, 474.) It is worthy of note that on the same day the Supreme Court denied the petition for writ of

*certiorari* in *West* (see 378 U·S. 557, 12 L. Ed. 2d 1034, 84 S. Ct. 1908), it reversed in a memorandum opinion *Germano* v. *Kerner,* 220 F. Supp. 230 (see 378 U.S. 560, 12 L· Ed. 2d 1034, 84 S. Ct. 1908,) which eventually culminated in our establishing the provisional senatorial districts in *People ex rel. Engle* v. *Kerner,* 33 Ill.2d 11.

In *Stander* the Pennsylvania court rejected the argument here advanced by stating: "The function of the Constitutional Convention was to propose and *recommend* to the electorate of Pennsylvania changes and alterations in the existing State Constitution. The Convention had no lawmaking powers of any kind. * * * The approval or disapproval of the Constitutional Convention's proposed amendments in April, 1968, was submitted to the electorate of Pennsylvania solely on a statewide basis, which is the purest form of 'one man, one vote'. If the convention which submitted the proposals did not represent all of the voters of the State equally, this defect was clearly cured by the approval of the voters at the April 28, 1968, statewide election." 250 A. 2d 474.

Neither *State* v. *Gore,* 150 W.Va. 71, 143 S.E.2d 791, nor *State* v. *State Canvasing Board,* 78 N. Mex. 682, 437 P.2d 143, cited by plaintiff, support his contention. *Gore* was decided on the basis of a specific provision in the West Virginia constitution· *State Canvassing Board* involved the weight to be given each elector's vote when a proposed constitutional amendment was submitted to the people of the State at large for its adoption or rejection.

We are of the opinion that the one-man, one-vote principle is not applicable to the election of members to a constitutional convention where the only authority of the members is to propose amendments to be submitted to a vote of the people of the State at large. *West* v. *Carr,* 212 Tenn. 367, 370 S.W.2d 469, *cert·* den. 378 U.S. 557, 84 S. Ct. 1908; *Stander* v. *Kelly,* 433 Pa. 406, 250 A. 2d 474, *cert.* den. *Lindsay* v. *Kelley,* 395 U.S. 827, 23 L. Ed. 2d 738, 89 S. Ct. 2130.

The loyalty oath prescribed in section 5 of the Act is clearly unconstitutional. It is in violation of section 1 of article XIV which provides only that delegates take an oath to support the constitution of the United States and the State of Illinois and to faithfully discharge their duties, while the oath prescribed in the Act contains other loyalty provisions. Furthermore, it is in violation of the first and fourteenth amendments of the Federal constitution as well. See *Thalberg* v. *Board of Trustees* and *Krehbiel* v. *Board of Education,* Nos. 68 C 211 and 68 C 212 consolidated, U.S. Dist. Ct. N. D. of Ill., E. D.

There is no problem in eliminating certain officers as ineligible to qualify as delegates and elimination of the oath. Section 17 of the Act provides for severability. "If what remains after the invalid portion is stricken is complete in itself and capable of being executed wholly independently of that which is rejected, the invalid portion does not render the entire section unconstitutional unless it can be said that the General Assembly would not have passed the statute with the invalid portion eliminated." (*People ex rel. Adamowski* v. *Wilson,* 20 Ill.2d 568, 582.) The valid and invalid provisions may even be contained in the same sentence. *McDougall* v. *Lueder,* 389 Ill. 141; *People ex rel. Holland Coal Co.* v. *Isaacs,* 22 Ill.2d 477.

The General Assembly had the mandate of the people to call a constitutional convention pursuant to the requirements of article XIV. We are of the opinion that Public Act 76—40, with the exception of minor deviations herein mentioned, was an exercise of legislative power within the terms of the grant of authority found in article XIV and that the Act, without these deviations, is complete and capable of being executed and is the will of the people and the legislature.

The judgment of the circuit court of Sangamon County is affirmed insofar as it permits members of the General Assembly to be delegates; and it is affirmed insofar as it

holds that the governor, lieutenant governor, auditor of public accounts, secretary of state, superintendent of public instruction, and attorney general (disqualified under section 5 of article V) and any convicted officer or one who has failed to account for public moneys (disqualified under section 4 of article IV) or any officer who has been impeached (disqualified under section 24 of article IV) may not qualify as delegates; the judgment is reversed insofar as it disqualifies elective or appointed officers other than those enumerated and is reversed insofar as it approves the form of oath prescribed in the Act. In all other respects the judgment is affirmed.

*Affirmed in part and reversed in part.*

Mr. Justice Schaefer and Mr. Justice Ward, dissenting:

We concur in the judgment of the court insofar as it relates to the non-partisan election of delegates, the oath, and to the one-man-one-vote issue. But we do not agree with the decision of the court on the question of the eligibility of members of the constitutional convention.

Section 1 of article XIV of the constitution fixes the qualifications of members of a constitutional convention. It provides: "The qualifications of members shall be the same as that of members of the Senate, * * *." Section 3 of Public Act 76—40 repeats the language of the constitution and then adds the underscored clause: "The qualifications of members shall be the same as that of members of the Senate, except that any person who otherwise qualifies but is a member of the General Assembly or holds any other elective or appointive office under the Constitution or laws of this state may also serve as a member of the Convention." One of the issues raised by the plaintiff in this case is the validity of the "except" clause in section 3 which is said to depart from the constitutional statement of qualifications.

One of the constitutional provisions that states the

qualifications of members of the senate is section 3 of article IV. The first three sentences of that section provide: "No person shall be a senator who shall not have attained the age of twenty-five years, or a representative who shall not have attained the age of twenty-one years. No person shall be a senator or a representative who shall not be a citizen of the United States, and who shall not have been for five years a resident of this state, and for two years next preceding his election a resident within the territory forming the district from which he is elected. No judge or clerk of any court, secretary of state, attorney general, state's attorney, recorder, sheriff, or collector of public revenue, member of either house of congress, or person holding any lucrative office under the United States or this state, or any foreign government, shall have a seat in the general assembly: * * *."

Section 1 of article XIV "incorporates bodily" the provisions of section 3 of article IV which govern the qualifications of senators and makes those qualifications applicable to members of the constitutional convention. (See, *e.g*: *Hassett* v. *Welch,* 303 U.S. 303, 314, 82 L. Ed. 858, 866-7; *Kloss* v. *Suburban Cook County Tuberculosis Sanitarium Dist.,* 404 Ill. 87, 94.) So incorporated, and as they bear upon the qualifications of members of a convention, they read: "No person shall be a member of a constitutional convention who shall not have attained the age of twenty-five years * * *. No person shall be a member of a constitutional convention who shall not be a citizen of the United States, and who shall not have been for five years a resident of this state, and for two years next preceding his election a resident within the territory forming the district from which he is elected. No judge or clerk of any court, secretary of state, attorney general, state's attorney, recorder, sheriff, or collector of public revenue, member of either house of congress, or person holding any lucrative office under the United States or this state, or any foreign govern-

ment, shall have a seat in the constitutional convention:
\* \* \*." By using the drafting technique of incorporation
by reference, the draftsmen of the constitution accomplished
the identical result that would have been achieved by includ-
ing a specific reference to the qualifications of members of
a constitutional convention in section 3 of article IV. The
fact that a proposal for such a specific reference was not
adopted is therefore of no significance.

It is at once apparent that no person who holds one of
the offices enumerated in the third sentence of section 3 of
article IV of the constitution, or who holds "any lucrative
office under the United States or this state or any foreign
government, shall have a seat" in the constitutional con-
vention. It is undisputed that members of the General As-
sembly hold civil offices (see Const. art. V, sec. 25) and that
those offices are lucrative. It follows that persons who
hold any of the offices specifically mentioned in section
3 of article IV, members of the General Assembly, and any
other persons who hold lucrative offices, are prohibited from
having seats in a constitutional convention.

The effect of the constitutional qualifications upon mem-
bership in a constitutional convention does not mean that the
officers mentioned in section 3 of article IV of the constitu-
tion, members of the General Assembly or other persons
who hold lucrative offices, may not serve as members of the
constitutional convention. It does mean, however, that those
persons may not do so while holding their present offices.

The opinion of the majority fails to discuss the third
sentence of section 3 of article IV even though it speaks
directly to the question before the court—eligibility to
"have a seat in the general assembly," and so, also, eligibil-
ity to "have a seat in a constitutional convention." Instead,
the opinion lumps the third sentence of section 3 of article
IV with the fourth sentence, and describes both as "merely
a prohibition against holding two offices at the same time as
described therein and is not a bar to eligibility for senator."

We do not understand how it can be said that a provision which prohibits having a seat in the general assembly can be said not to be "a bar to eligibility for senator."

In our view it is unnecessary to look beyond the provisions of the constitution that have been discussed in order to dispose of the question of eligibility to have a seat in the convention. But since the court has gone further, we think it is appropriate to state that in our opinion a member of a constitutional convention holds a public office within the meaning of section 24 of article V of the constitution which provides: "An office is a public position created by the constitution or law, continuing during the pleasure of the appointing power, or for a fixed time, with a successor elected or appointed. An employment is an agency, for a temporary purpose, which ceases when that purpose is accomplished." Certainly a member of a constitutional convention holds a public position created by the constitution.. The constitution itself provides for the election of successors, in the event of "vacancies occurring" during the convention. (Art. XIV, sec. 1) So does section 4 of Public Act 76—40. The only possible question is whether the position continues for a fixed time. That question is answered, we think, by Public Act 76—40, which in section 8 provides that members can receive pay only "for a period not to exceed 8 months." If that is not conclusive, section 19 provides that Public Act 76—40 is repealed effective June 30, 1971. This provides a fixed terminal date.

Finally, there is the problem of separability. Strong arguments can be advanced in support of the desirability of including as members of a constitutional convention those persons who are experienced in the executive, legislative and judicial branches of the State government. It seems clear that these are the policy considerations that prompted the legislature to adopt the "except" clause of section 3 of the statute. But we are aware of no considerations of policy which would argue in favor of permitting members of the

legislative branch to serve in a constitutional convention while excluding State officers in the executive and judicial branches of the government. To reach that result, it is necessary to hold not just that the entire "except" clause is separable, but that the "except" clause can itself be dismembered and sustained in part and invalidated in part. Because we do not believe the General Assembly would have intended to make only themselves eligible for membership in the convention, while excluding members of other branches of the government, we are unable to say that the General Assembly would have adopted section 3 with the invalid portions of that section eliminated.