THE PEOPLE *ex rel.* BRUCE W. BLACK, Tazewell County State's Attorney, Plaintiff-Appellee, *v.* DENZIL L. DUKES, Defendant-Appellant.

Third District No. 81—628

Opinion filed September 9, 1982.

SCOTT, J., dissenting.

Homer J. Tice, of Knuppel, Grosboll, Becker & Tice, of Petersburg, for appellant.

G. Edward Orr, Assistant State's Attorney, of Pekin, for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

Defendant, Denzil L. Dukes, is a member of the Village of South Pekin Board of Trustees. South Pekin is a rural community with a population of approximately 1,250 people. Mr. Dukes is also a member of the South Pekin Grade School Board. The grade school, offering classes to students in grades K through 8, has approximately 360 students. The Village of South Pekin is completely encompassed within the South Pekin Grade School District.

The Tazewell County State's Attorney contends that it is incompatible for the defendant to serve on both the village board and the grade school board. Thus, it is his claim that when Mr. Dukes was elected to the school board at a time when he was already serving on the village board, he automatically and *ipso facto* terminated his position on the village board. Dukes disagrees. He maintains his entitlement to serve on both boards.

To prove his point, the State's Attorney sought a writ of *quo warranto* and a declaratory judgment. The trial court agreed with the State's Attorney. It found the simultaneous holding of the two offices to be incompatible and ruled that Dukes had automatically vacated his

position on the village board when he was elected to the school board. The uncontroverted facts follow.

On April 8, 1978, Denzil L. Dukes, a private citizen and resident of the village of South Pekin, was elected to fill an unexpired term on the South Pekin Grade School Board of Education for a one-year term. Approximately three months later, Dukes was appointed to a position on the South Pekin Board of Trustees. On April 10, 1979, Dukes was elected to fill the vacancy to which he has been appointed on the board of trustees, which term was to be for four years. Four days later he was elected to serve a three-year term on the South Pekin Grade School Board of Education.

The claimed incompatibility of Dukes' two offices stems from the fact that the village board and the school board, both being units of local government under State statutes, are authorized to enter into contracts with each other. Section 10 of article VII of the Illinois Constitution of 1970, in relevant part, provides:

"(a) Units of local government and school districts may contract or otherwise associate among themselves, with the State, with other states and their units of local government and school districts ***." (Ill. Const. 1970, art. VII, sec. 10(a).)

"(b) Officers and employees of units of local government and school districts may participate in intergovernmental activities authorized by their units of government without relinquishing their offices or positions." Ill. Const. 1970, art. VII, sec. 10(b).

Thus, the South Pekin Board of Trustees and the South Pekin Grade School Board of Education may contract and legally associate with one another. Moreover, the village of South Pekin, through the board of trustees, has the authority to grant financial assistance to the school district through State revenue sharing funds. (Ill. Rev. Stat. 1979, ch. 85, par. 611 *et seq.*) For these reasons, the State's Attorney, relying on *People v. Haas* (1908), 145 Ill. App. 283, claims that it is impossible for Dukes in every instance to properly and fully perform all the duties of each office without experiencing an incompatible conflict of interest.

*Haas* involved the election of an individual to the office of State Senator. Subsequent to that time, he was elected Clerk of the Municipal Court of Cook County. A proceeding was brought to compel the County Clerk of Cook County to declare that office of State Senator vacant as a result of his election to the office of Municipal Court Clerk for Cook County. The court found the two offices were incompatible under an Illinois constitutional provision which provided that "No judge or clerk of any court *** shall have a seat in the General

Assembly ***." (Ill. Const. 1870, art. IV, sec. 3.) Accordingly, the court held that acceptance of the office of clerk was an *ipso facto* resignation of the office of senator.

The court in *Haas* stated:

> "Incompatibility, in this connection, is present when the written law of a state specifically prohibits the occupant of either one of the offices in question from holding the other and, also, where the duties of either office are such that the holder of the office cannot in every instance, properly and fully, faithfully perform all the duties of the other office. This incompatibility may arise from multiplicity of business in the one office or the other, considerations of public policy or otherwise." 145 Ill. App. 283, 286.

*Haas* is clearly distinguishable on its facts. The governmental offices involved in *Haas* were entirely different offices than are involved in the instant case. And *Haas* is distinguishable on the law. In *Haas* there was an Illinois constitutional provision which specifically barred a court clerk from having a seat in the General Assembly.

While it is arguable that the quoted dicta from *Haas* could be viewed in one light so as to bar the double office holding in the instant case, it is more strongly arguable that such language does not support that interpretation. *Haas* was dealing with a specific constitutional prohibition that simply does not pertain to the case at hand.

Moreover, we see no conflict or incompatibility between membership on a school board and a village board of trustees. The duties and responsibilities of these two boards are entirely different and unrelated. The potential problems suggested by the State's Attorney of revenue sharing and intergovernmental cooperation have not occurred in fact during defendant's tenure, and the likelihood of their occurring are purely speculative. If such a potential conflict of interest should become an actual conflict, it could be satisfactorily dealt with by the mere expedient of the board member simply withdrawing from participation on that particular matter. This withdrawal on a specific matter would be no different than a board member declining participation on a business matter involving his governmental unit where some third party who was a friend or relative of the board member was transacting business with that public body. By way of illustration, judges, for instance, recuse themselves from a specific case when they anticipate a potential conflict of interest. They do not resign their judicial position for that reason.

Indeed, the 1970 Illinois Constitution encourages intergovernmental cooperation and authorizes officers and employees of govern-

mental units to take part in the administration of intergovernmental activities. (7 Record of Proceedings, Sixth Illinois Constitutional Convention 1748.) Thus, we do not share the State's Attorney's view that intergovernmental cooperation arrangements between the two boards in question would, of necessity, create any actual conflict of interest. That would depend on the facts of the situation.

The right to hold office is a valuable one. The exercise of such right should not be prohibited or curtailed except by plain provisions of the law. Statutes imposing disqualifications of public officers should be strictly construed, while those declaring qualifications should be construed liberally, and every doubt or ambiguity must be resolved in favor of eligibility. *Livingston v. Ogilvie* (1969), 43 Ill. 2d 9; *Brown v. Kirk* (1975), 33 Ill. App. 3d 477.

Citizen participation in government should be encouraged rather than discouraged. Illinois, with its multiplicity of local governmental units, is continuously challenged to find adequate numbers of capable citizens who are ready, willing and able to fill the thousands of official positions which the law has created. Most such officials serve without pay and devote countless hours to their duties. School boards are a case in point. Other examples would include zoning boards, police and fire commissions, sanitary and fire district boards, park districts, library boards, and so forth. The list goes on and on. Especially in small communities, citizens must often be recruited in direct opposition to their personal peace and comfort and encouraged in the name of good citizenship to accept these often thankless jobs. We note that the defendant in this case was first elected to the village board to fill an unexpired term and was later appointed to fill a vacancy on the school board. He is deserving of commendation rather than condemnation for his willingness to accept the civic challenge to fill these board vacancies. We also note that the smaller the community, the more difficult it is to find citizens in sufficient numbers to fill available governmental positions. This is an observable and indisputable fact. Certainly, South Pekin, with some 1,250 residents, is no exception to this rule. We find no dispute as to Mr. Duke's qualifications to serve; he has been twice elected to each board. The public, we must conclude, approves of his holding those offices. We see no reason to hold otherwise.

For the reasons given, the judgment of the circuit court is reversed.

Reversed.

BARRY, P. J., concurs.

JUSTICE SCOTT, dissenting:

No aspersion has been cast upon the integrity of the defendant Dukes, nor should there be. I further agree with the observation in the majority opinion to the effect that citizen participation in governmental affairs should be encouraged rather than discouraged, yet I am constrained to dissent from the result reached in the majority opinion.

As I read the majority opinion, it concedes that there is a possibility of a conflict of interest resulting from the defendant's dual service as a trustee of the village of South Pekin and as a member of the South Pekin Grade School Board. The majority opinion states that this conflict could be avoided by his withdrawal and refusal to participate in situations that might give rise to a conflict. An argument is advanced that the defendant could do as judges do, to-wit, recuse themselves from a specific case when their participation in a case would give rise to a possible charge of impropriety.

In examining these observations found in the majority opinion it should first be noted that it is stated that the defendant *could* recuse himself from participation in certain situations. It is not stated that it would be mandatory for the defendant to do so and rightly so, because there is no constitutional or statutory provision requiring such action on the part of the defendant. I am further of the belief that it would be a grave mistake to try by judicial opinion to vest in dual office holders the right to determine when their participation in governmental affairs would give rise to a charge of conflict of interest. Such an opinion would encourage dual office holding, thereby spawning a rash of litigation, and would further be a serious blow to the continuous quest for integrity in government.

Judges do recuse themselves from cases where their participation would give rise to a charge of impropriety. They do so for a number of reasons, *i.e.*, personal knowledge about the litigation, personal friendship or animosity as to the parties or counsel, personal philosophy as to certain doctrines. All of these factors could give rise to bias or a charge of bias. Judges in our State, unlike the defendant, are not dual office holders. They do not, like the defendant, affirmatively take steps to place themselves in a questionable situation. The activities of judges in our State are stringently regulated, and I fail to see any logical analogy between their activities and the activity of the defendant.

The majority opinion recognizes that the South Pekin Board of

Trustees and the Grade School Board of Education may contract and legally associate with each other. It also recognizes that the village of South Pekin through the board of trustees has authority to grant financial assistance to the school district through State revenue sharing funds. It is impossible to refute the fact that the defendant has placed himself in the position where he may well have to serve two masters. Serving two masters has never proved to be a successful venture. It is unfair to the masters, it is unfair to the individual who attempts to so serve, and in the instant case it is unfair to the citizens of South Pekin.

The majority opinion recognizes the case of *People v. Haas* (1908), 145 Ill. App. 283, but asserts that the holding in *Haas* is not applicable in the instant case because in *Haas* there was a specific constitutional prohibition against dual office holding. The majority opinion has set forth the pertinent language of *Haas* regarding situations where incompatibility results from dual office holding. The language does not require the existence of specific statutory or constitutional provisions prohibiting dual office holding before incompatibility will arise, but states that consideration of public policy will result in incompatibility. In the instant case a public policy question is present in that the defendant is in a position where he cannot impartially perform the duties of each of the governmental offices which he serves.

On June 30, 1980, the Attorney General of our State issued opinion No. S—1494 (1979-1980 Ill. Opp. Att'y Gen. 80) which advised the State's Attorney of Vermilion County that the holding by the same individual of the offices of village mayor and school board member resulted in incompatibility because it was possible that conflicts of interest might arise due to State revenue sharing. Attorney General opinions have no precedential authority but can be cited for advisory purposes only. I deem the opinion noteworthy in that it addresses the precise question presented in the instant case.

For the reasons stated I am of the opinion that the judgment of the circuit court of Tazewell County should be affirmed.