DAVID F. ROGERS, Plaintiff-Appellee, *v.* THE VILLAGE OF TINLEY PARK *et al.*, Defendants-Appellants.

First District (1st Division)   No. 82—0385

Opinion filed June 30, 1983.

438

John B. Murphey, of Ancel, Glink, Diamond, Murphy & Cope, P.C., of Chicago, for appellants.

Murphy, Preston & Jaffe, of Chicago (James P. Flannery, Jr., and Lee Preston, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff, David F. Rogers, filed an action for declaratory judgment to determine his right to serve as an elected village trustee of defendant village of Tinley Park, while also serving as a police officer on leave of absence status with the same municipality. Rogers and the village filed cross-motions for summary judgment. Although Rogers named other parties as defendants in his action, the only parties before this court are the plaintiff Rogers and the defendant village. The trial court granted plaintiff's motion and denied that of the village, holding that plaintiff had the right to serve in both capacities. The village appeals, contending that the positions of village trustee and police officer are incompatible and that plaintiff's acceptance of the position of village trustee automatically resulted in his resignation as a police officer.

The village of Tinley Park is a home rule municipality, governed by a legislative body consisting of an elected village president and six elected individual trustees, known collectively as the board of trustees. The board has the legislative responsibility for governing the village, including regulation of all village officers and employees.

Plaintiff has been a village police officer since 1973. In March

1981 his rank was patrol officer. On January 12, 1981, Rogers requested a leave of absence from the police department from February 15 through March 31, 1981, for the reason that he intended to run for public office in the April 1981 election. The police chief orally approved his request the next day.

On January 20, 1981, plaintiff met with the village manager, Dennis Kallsen, who told him that because of a lack of consistent application of the department's rule relating to "political utilization of official positions" it would not be necessary for Rogers actually to take a leave of absence during his candidacy. On that date Rogers withdrew his request for a leave of absence and the village manager formally approved that withdrawal. He advised Rogers that an employee could run for political office as long as no campaigning was done on duty and any campaigning done had to be done out of uniform. He also advised Rogers as to the mechanics of a request for leave of absence and that, if an extended leave were granted, it would be without pay, but that the employee would be allowed to remain under the village's group insurance policy if the employee paid the premium, and that the extended leave time would be viewed as creditable service for seniority purposes.

Rogers was elected village trustee at the April 7, 1981, election. On April 21, 1981, the village attorney answered an inquiry from the president and board of trustees as to whether Rogers may continue to be employed as a village police officer subsequent to the time he qualifies to hold the office of village trustee:

> "In my opinion, Trustee-elect Rogers may not continue to be employed as a Village police officer after he qualifies to hold the office of Village Trustee. Further, Trustee-elect Rogers' act of qualification, *ipso facto*, operates as a resignation from his employment as a police officer."

On April 28, 1981, approximately one week prior to his qualification and assumption of duties as trustee on May 5, 1981, Rogers requested that the chief of police grant him a one-year leave of absence effective May 5, 1981, through May 4, 1982, to assume his trustee duties. The chief of police responded by letter dated April 29, 1981. Based on the village attorney's opinion, the chief concluded that a leave of absence could not be granted to a person who had resigned from the police department.

On May 5, 1981, Rogers was sworn in as village trustee and assumed the duties of that office. On May 6, 1981, the chief of police wrote Rogers and formally acknowledged his automatic resignation.

Rogers filed a complaint for a declaratory judgment that he had

not voluntarily or automatically resigned from his position as a police officer and that he could lawfully serve as village trustee while a police officer on leave of absence. The village's answer alleged facts demonstrating the incompatibility between the two positions. Based on these facts, the village moved for summary judgment. Rogers filed a cross-motion for summary judgment, contending that (1) the common law doctrine of incompatibility affects only officers and has no application to municipal employees such as Rogers; (2) there is no statute or constitutional provision prohibiting the holding of both the office of trustee and the status of an employee on leave of absence; and (3) there are insufficient conflicts between the positions of trustee and policeman on leave to invoke the doctrine of incompatibility.

The trial court granted plaintiff's motion and denied defendant's motion. It based its judgment on a ground neither raised nor argued by either party, holding that the application of the incompatibility rule would result in an unconstitutional "chill" on Rogers' first amendment right to seek and hold elective public office. On appeal, Rogers makes no attempt to uphold the trial court's judgment on that ground, stating that while he agrees with the trial court's decision, he would reach it for different reasons.

The village argues that (1) the positions of police officer and village trustee are incompatible; (2) a police officer is an "officer" within the proscription of sections 3—4—3 and 3—14—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1979, ch. 24, pars. 3—4—3, 3—14—1); and (3) section 3 of the Corrupt Practices Act (Ill. Rev. Stat. 1979, ch. 102, par. 3) prohibits plaintiff from holding both positions. We find it necessary to consider only the first argument.

The doctrine of incompatibility is succinctly stated in *People v. Haas* (1908), 145 Ill. App. 283, 286-87:

> "Incompatibility *** is present when the written law of a state specifically prohibits the occupant of either one of the offices in question from holding the other and, also, where the duties of either office are such that the holder of the office cannot in every instance, properly and fully, faithfully perform all the duties of the other office. This incompatibility may arise from multiplicity of business in the one office or the other, considerations of public policy or otherwise. Bacon's Abridgement Vol. 7, Tit. 'Officers,' K.; Rex v. Tizzard, 9 B. & C., 418; 1 Dillon on Mun. Corp., p. 308-9, secs. 225—7 and note 4; McCrary on Elec., secs. 336 *et seq.* 4th Ed; Mechem on Pub. Off., sec. 429; Dickson v. People, 17 Ill. 191; People *ex rel.* v. Hanifan, 96 Ill. 420; Packingham v. Harper, 66 Ill. App. 96. From these author-

ities it also appears that in case of incompatibility the acceptance of the second office is *ipso facto* a resignation of the first office. By his own action the officer expresses his voluntary resignation."

See also *People ex rel. Petka v. Bingle* (1983), 112 Ill. App. 3d 73, 445 N.E.2d 941.

The elements of the doctrine of common law incompatibility are stated in 63 Am. Jur. 2d *Public Officers and Employees* sec. 73 (1972):

"It is to be found in the character of the offices and their relation to each other, in the subordination of the one to the other, and in the nature of the duties and functions which attach to them.

Incompatibility of offices exists where there is a conflict in the duties of the offices, so that the performance of the duties of the one interferes with the performance of the duties of the other. They are generally considered incompatible where such duties and functions are inherently inconsistent and repugnant, so that because of the contrariety and antagonism which would result from the attempt of one person to discharge faithfully, impartially, and efficiently the duties of both offices, considerations of public policy render it improper for an incumbent to retain both.

At common law, it is not an essential element of incompatibility of offices that the clash of duty should exist in all or in the greater part of the official functions. If one office is superior to the other in some of its principal or important duties, so that the exercise of such duties may conflict, to the public detriment, with the exercise of other important duties in the subordinate office, then the offices are incompatible."

and in section 74:

"One of the most important tests as to whether offices are incompatible is found in the principle that the incompatibility is recognized whenever one is subordinate to the other in some of its important and principal duties, and subject in some degree to the other's revisory power. Thus, two offices are incompatible where the incumbent of the one has the power of appointment to the other office or the power to remove its incumbent, even though the contingency on which the power may be exercised is remote." 63 Am. Jur. 2d *Public Officers and Employees* sec. 74 (1972).

While the question of the incompatibility of the positions of police

officer and member of the municipal legislative body has not been considered in Illinois, it has been decided adversely to plaintiff's contentions in three cases arising in New Jersey.

In *O'Connor v. Calandrillo* (1971), 117 N.J. Super. 586, 285 A.2d 275, *affirmed* (1972), 121 N.J. Super. 135, 296 A.2d 326, *cert. denied* (1973), 62 N.J. 193, 299 A.2d 727, *cert. denied* (1973), 412 U.S. 940, 37 L. Ed. 2d 399, 93 S. Ct. 2775, the court held that the positions of police sergeant and city commissioner held by Calandrillo were incompatible, as were the positions of two other city commissioners (Lombardo, secretary to the board of assessors, and Lagomarsino, advisor of veterans' affairs). The court said (117 N.J. Super. 586, 589-92, 285 A.2d 275, 277-78):

> "Regardless of the existence of specific statutory prohibitions, the common law doctrine of incompatibility has developed as a matter of public policy in order to insure that there be the appearance as well as the actuality of impartiality and undivided loyalty. [Citation.] Incompatibility exists 'where in the established governmental scheme one office is subordinate to another, or subject to its supervision and control, or the duties clash, inviting the incumbent to prefer one obligation to another.' [Citations.] If the duties of the two offices are such that when 'placed in one person they might disserve the public interests, or if the respective offices might or will conflict even on rare occasions, it is sufficient to declare them legally incompatible.' [Citation.]
>
> * * *
>
> As observed by our Supreme Court in Jones v. MacDonald, *supra*:
>
>> It is no answer to say that the conflict in duties outlined above may never in fact arise. *** Nor is it an answer to say that if a conflict should arise, the incumbent may omit to perform one of the incompatible roles. The doctrine was designed to avoid the necessity for that choice. [33 N.J. 132, 138, 162 A.2d 817, 820.]
>
> Although the particular offices or positions to which these three commissioners were assigned are not incompatible with their offices as commissioners in the sense of function, nevertheless they are clearly incompatible within the broad sense of the evil sought to be avoided by the salutary rule invoked in the interest of the public.
>
> Each of the additional posts assumed by these commissioners is subordinate to the board of commissioners of which they are

members, and each of them is subject to the control of that board. This control is real and meaningful, for it affects the very existence of their positions and the emoluments received by them. For them to continue in these dual positions would deprive the citizens of the municipality of the independent judgment of these elected officials whenever an issue might arise affecting their respective jobs. ***

It is therefore determined on the basis of the applicable common law doctrine that the dual posts held by Calandrillo, Lombardo and Lagomarsino are legally incompatible and that they cannot continue to hold the same."

In *Kaufman v. Pannuccio* (1972), 121 N.J. Super. 27, 295 A.2d 639, the positions of police lieutenant and member of the city council were held to be incompatible. The court said (121 N.J. Super 27, 30-32, 295 A.2d 639, 640-41):

"Russo raises but one point, that his position as a lieutenant in the Passaic Police Department was not incompatible with his holding office as a member of the council. We disagree, and affirm the judgment of the Law Division.
***

The common law doctrine of incompatibility has developed as a matter of sound public policy [Citation.] It is calculated to insure that there be the appearance as well as the actuality of impartiality and undivided loyalty. Incompatibility is generally understood to mean a conflict or inconsistency in the functions of an office. It may be said to exist 'where in the established governmental scheme one office is subordinate to another, or subject to its supervision or control, or the duties clash, inviting the incumbent to prefer one obligation to another.' Reilly v. Ozzard, 33 N.J. 529, 543, 166 A.2d 360, 367 (1960). See also *** O'Connor v. Calandrillo, *supra*, 117 N.J. Super. at 589, 285 A.2d 275. If the duties of the two offices are such that when 'placed in one person they might disserve the public interests, or if the respective offices might or will conflict even on rare occasions, it is sufficient to declare them legally incompatible.' De Feo v. Smith, *supra*, 17 N.J. at 189, 110 A.2d at 556.
***

Here we are clear that Russo's position as a lieutenant in the police department is incompatible with his position as a member of the municipal council. O'Connor v. Calandrillo, *supra*, 117 N.J. Super. at 590-91, 285 A.2d 275. As a member of the council he would be empowered and called upon to pass upon

matters involving salary, tenure and promotion of members of the police department, including himself. The fact that the council is required to deal with the administrative service of the city through the city manager, N.J.S.A. 40:69A—91, does not cure the incompatibility. Indeed, it may be noted that the manager is appointed by the council, N.J.S.A. 40:69A—89, and his tenure is at all times subject to termination by a majority of the council, N.J.S.A. 40:69A—93.''

In *Dunn v. Froehlich* (1978), 155 N.J. Super. 249, 252-54, 382 A.2d 686, 687-88, the court held that the positions of lieutenant and councilman were incompatible:

"Defendant also argues that no incompatibility exists between these two offices. The doctrine of incompatibility of offices is a common law creation, arising out of the public policy that an officeholder's performance not be influenced by divided loyalties. *Schear v. Elizabeth*, 41 N.J. 321, 325, 196 A.2d 774 (1964). An incompatibility exists whenever the statutory functions and duties of the offices conflict, as when one is subordinate to the other, subject to its control, or requires the officer to choose one obligation over another. *Schear, supra*; [citations].

\* \* \*

An examination of the statutory duties of the offices compels the conclusion that they result in an incompatibility. Elizabeth is organized under Mayor-Council Plan F of the Faulkner Act, N.J.S.A. 40:69A—74 to 80. Under N.J.S.A. 40:69A—74, providing for the Mayor-Council Plan F, the provisions of N.J.S.A. 40:69A-2 to 30 and 40:69A—36 to 48, are incorporated as governing any municipality adopting that form of government.

Thus, the council is empowered to investigate municipal departments and officers and to remove any municipal officer, other than the mayor or a member of the council. N.J.S.A. 40:69A—37. As a councilman and a policeman defendant would be statutorily charged with detecting and punishing misconduct within the police department and would in effect sit in judgment of his supervisor within the department. Such a conflict renders the offices incompatible. *Jones v. MacDonald, supra*, 33 N.J. at 137-138, 162 A.2d 817. In addition, N.J.S.A. 40:69A—46 confers upon the council budget approval powers, creating the potential for defendant to influence his own salary and departmental allocations. Moreover, N.J.S.A. 40:69A—43(b), (c), (d) and (e) invest a councilman with a role in appoint-

ing and removing department heads and in creating and abolishing offices. Defendant might thus have to decide on the continuance of his own job, as well as that of his supervisor."

■ The same considerations found to make the positions incompatible in those cases apply here with equal force.

The board of trustees of the village of Tinley Park must determine the salaries and fringe benefits of all village employees, including police officers. It must annually establish an operating budget for the village's police department and for all village departments and must annually levy taxes for various police purposes. It must authorize expenditures for various equipment and supply purchases for the police department and approve of officers attending seminars, conventions and supplemental training.

The civil service commission of the village is responsible for the hiring and firing of police officers, but the board of trustees has extensive and wide-ranging responsibilities in the field of police department labor relations and personnel decisions.

The board has the duty and responsibility of increasing or decreasing the numerical strength of the police department. Recently it voted to reduce the number of officers in the department. The village president and board of trustees, not the civil service commission, has the authority to appoint and remove the chief of police, the head of the department of police to which Rogers belongs. The board also has the authority, by ordinance, to appoint and remove the civil service commissioners or change the composition of the commission.

Rogers is a member of the Tinley Park Patrolmen's Association, a collective bargaining unit representing many members of the police department. There have been labor disagreements and serious negotiations between the board of trustees and the association. The village has entered into a collective bargaining agreement with the association as the exclusive bargaining agent for all village patrol officers. This agreement is subject to implementation and negotiation between the board and the association and expires during Rogers' present term of office as trustee.

■ Plaintiff contends, however, that any conflict between the positions of police officer and village trustee can be avoided by his not participating in any action involving the police department. We disagree.

In *Kaufman v. Pannuccio* (1972), 121 N.J. Super. 27, 31, 295 A.2d 639, 641, the court expressly rejected this argument:

"Where incompatibility has been shown to exist, it is no answer to say that, should there be a conflict in duty, an incum-

bent may omit to perform one of his incompatible roles. *Jones v. MacDonald, supra,* 33 N.J. at 138, 162 A.2d 817. And as was pointed out in the latter case:

> 'Public policy demands that an office holder discharge his duties with undivided loyalty. The doctrine of incompatibility is intended to assure performance of that quality. Its applicability does not turn upon the integrity of the person concerned or his individual capacity to achieve impartiality, for inquiries of that kind would be too subtle to be rewarding. The doctrine applies inexorably if the offices come within it, no matter how worthy the officer's purpose or extraordinary his talent. (at 135, 162 A.2d at 818).' "

Similarly, in *Dunn v. Froehlich* (1978), 155 N.J. Super. 249, 253, 382 A.2d 686, 687, the court said:

> "When such a statutory conflict of duties exists, it is not enough (as suggested by defendant) for the officeholder to disqualify himself when the conflict arises or to decline to act in the areas of conflict. The doctrine was designed to avoid the necessity for such an option, and the admitted need for such inaction is the most compelling proof that an incompatibility exists. *Jones v. MacDonald, supra,* 33 N.J. at 137-138, 162 A.2d 817; *Kaufman, supra,* 121 N.J. Super. at 31, 295 A.2d 639."

In *Dykeman v. Symonds* (1976), 54 App. Div. 2d 159, 163, 388 N.Y.S.2d 422, 425-26, the court, in holding incompatible the positions of county legislator and motor vehicle supervisor, stated:

> "The fact that respondent Symonds may indeed be able to resist temptation to act in a manner incompatible with the best interests of the County and that she may actually refrain from her duty of participating in the fixation of the salary of Motor Vehicle Supervisor is not enough to permit her to hold both positions. It is the possibility of wrongdoing and the principle involved which bars her from holding these incompatible offices (*People ex rel. Schenectady Illuminating Co. v. Board of Supervisors of County of Schenectady,* 166 App. Div. 758, 761, 151 N.Y.S. 1012, 1014; and see *People v. Freres,* 5 A.D.2d 868, 171 N.Y.S.2d 274; *Matter of County of Warren v. Levitt,* 20 Misc. 2d 598, 198 N.Y.S.2d 777; 27 Opinions, State Comptroller 125, 71—545)."

The New Jersey decisions in *O'Connor* and *Kaufman* were approved and followed in *Haskins v. State ex rel. Harrington* (Wyo. 1973), 516 P.2d 1171, where the court found incompatible the positions of teacher and trustee of a school district. In that case, the

court pertinently observed with reference to abstention from action to avoid a conflict of interest:

> "We also note that the need of the community for continuing exercise of judgment and the making of decisions on the basis of give-and-take discussion of independent minds is not served best where one of the board must at frequent intervals take no part because of conflict." 516 P.2d 1171, 1179.

During oral argument, plaintiff relied on *People ex rel. Black v. Dukes* (1982), 108 Ill. App. 3d 965, 439 N.E.2d 1305. Subsequently, the supreme court granted leave to appeal, held the issues moot and vacated the judgments of the appellate and circuit courts to prevent the appellate court's resolution of the issues from standing as precedent for future cases. *People ex rel. Black v. Dukes* (1983), 96 Ill. 2d 273.

Moreover, there is no limit as to the number of police officers who could serve on the village board of Tinley Park, thus making pertinent the observation of the concurring justices in *Haskins v. State ex rel. Harrington* (Wyo. 1973), 516 P.2d 1171, 1181:

> "The statute which he contended permitted him to serve on the board made no mention of teachers as board members and therefore no limitation as to the number of teacher board members was stated, and I fail to see how a limit could be implied. Therefore, if Haskins as a teacher could serve other teachers could also become members.
>
> If teachers constituted all or a majority of the members of the board of trustees the board could not transact any business dealing with teachers, including salary negotiations, because teacher members would have to absent themselves and there could be no majority action. If a school board could not set teachers' salaries and other contract terms it could not function. No reasonable argument could be made that the legislature intended to create a situation wherein a school board would be unable to perform its duties as the governing body of the school district."

■ Plaintiff argues that Rule VII, section 3, of the village of Tinley Park Civil Service Commission Rules gives him the right to serve as a village trustee while on leave of absence. That rule provides in part: "*** no leave of absence shall exceed one year, except to enable an officer or employee to accept any elective or appointive position in the public service ***." We disagree, because, even if on leave of absence, his seniority and pension and insurance rights are not jeopardized; in fact, his seniority rights are enhanced by the mere passage of

time. Thus, a leave of absence does not remove the incompatibility.

██ Finally, we find that the application of the common law incompatibility rule does not result in an unconstitutional "chill" on Rogers' first amendment rights.

In *Haskins v. State ex rel. Harrington* (Wyo. 1973), 516 P.2d 1171, 1173-74, the court held that the common law incompatibility rule prohibiting a school teacher from serving as a school board member of the district where he was employed did not violate the teacher's first amendment rights.

The United States Supreme Court has upheld, against a claim of violation of first amendment rights, more restrictive limitations on the right of a public officer or employee to run for public office or to serve as an elected official. *United Public Workers of America (C.I.O.) v. Mitchell* (1947), 330 U.S. 75, 91 L. Ed. 754, 67 S. Ct. 556; *United States Civil Service Com. v. National Association of Letter Carriers, AFL—CIO* (1973), 413 U.S. 548, 37 L. Ed. 2d 796, 93 S. Ct. 2880; *Clements v. Flashing* (1982), 457 U.S. 957, 73 L. Ed. 2d 508, 102 S. Ct. 2836. See also *Magill v. Lynch* (1st cir. 1977), 560 F.2d 22.

The judgment of the circuit court of Cook County is reversed and the cause remanded with directions to grant defendant's motion for summary judgment and to deny plaintiff's.

Reversed and remanded with directions.

GOLDBERG and CAMPBELL, JJ., concur.