**In re Whitehall Township Article III**

*Donald E. Wieand Jr.*, for Whitehall Township.
*Robert E. Donatelli*, for defendant Elizabeth L. Buchmiller.

BACKENSTOE, *P.J.*, July 14, 1986 —Before the court is an action for declaratory judgment filed by the plaintiff, Whitehall Township, through its executive, Michael P. Harakal Jr., in which the township seeks a ruling on the enforceability of certain sections of the township's Home Rule Charter and Administrative Code. The township has the status of a home rule charter municipality under the Home Rule Charter and Optional Plan Law, act of April 13, 1972, P.L. 184, *as amended*, 53 P.S. §§1-101 through 1-1309. Article III, section 3.07 of the township's Home Rule Charter provides in pertinent part:

"Except where authorized by law or by this charter, no commissioner during his or her term of office shall hold any other township office or employment of any other governmental office or employment in which he or she receives a salary, compensation or emolument. . . . "

Section 1703 of the Township's Administrative Code, titled Code of Ethics, provides in pertinent part that "[n]o commissioner shall hold any other governmental or township office or employment in which he or she receives salary, compensation or emolument."

The instant action arose as a result of the recent election and re-election of two township commis-

sioners whose full-time occupations form the basis of inquiry in light of the aforesaid provisions. In November 1983, Gerald J. Fabian, after serving as a township commissioner for 10 years, was re-elected and sworn into office in January 1984. Mr. Fabian is currently employed by the Carbon-Lehigh Intermediate Unit which is affiliated with the Whitehall-Coplay School District. We note, the township's complaint at paragraph 11 avers that township records indicate prior boards had included employees of the school district, whose eligibility was not questioned under the aforesaid home rule charter or administrative code provisions.

In November 1985, Elizabeth L. Buchmiller was elected commissioner and sworn into office in January 1986. Mrs. Buchmiller is currently employed by the commonwealth in the office of the Auditor General. As the Township Executive is charged by the charter with enforcing the township's charter, he instituted the instant action seeking a determination as to whether Mrs. Buchmiller and Mr. Fabian can properly serve as commissioners while employed in their aforesaid capacities as employees for other governmental entities.

At the outset we note that the court's jurisdiction has been properly invoked under section 7533 of the Declaratory Judgments Act which provides that any person whose legal relations are affected by a municipal ordinance may have determined any question of construction or validity arising under the ordinance and may obtain a declaration of rights, status or other legal relations thereunder.[1]

---

1. Act of July 9, 1976, P.L. 586, §2, 42 Pa.C.S. §7531 et seq.

The parties have raised two issues for our consideration.[2] The first is whether the township, through its home rule charter, had the authority to determine the compatibility of employment or governmental office positions held by township commissioners.[3] If this issue is answered in the negative, the matter is ended. If, however, it is answered in the affirmative, a second issue is raised as to whether the township has exceeded its authority. Stated differently, the question is whether the subject Home Rule Charter and Administrative Code provisions violate the rights of governmental employees as guaranteed by the First Amendment of the United States Constitution.[4] As to the first issue, we note that the authority of the city of Philadelphia to make incompatibility determinations of

2. It is to be noted that Commissioner Buchmiller is represented by counsel in this action while Commissioner Fabian is unrepresented. Although no brief was submitted on behalf of Mr. Fabian, he did appear at oral argument and stated his position to the court. Essentially, Mr. Fabian sought to distinguish his situation from that of Mrs. Buchmiller. The gist of Mr. Fabian's position is that although admittedly an employee of a "governmental unit" as an educator, he is in an occupation that is separate and apart from political pursuits or other more general governmental occupations.

3. The concept of home rule contemplates that "the source of authority to act in specified areas is transferred from the state and the various municipal codes to the individual municipality and its home rule charter." Home Rule in Pennsylvania, 81 Dick. L. Rev. 265 (1976).

4. It is clear that the First Amendment embodies freedom of political expression and activity of the individual. See *Sweezy v. New Hampshire*, 354 U.S. 234, 77 S.Ct. 1203, 1 L.Ed. 2d 1311 (1957). Included therein is the right to run for office and to have one's name on the ballot. *Washington v. Finlay*, 664 F.2d 913 (4th Cir., 1981), cert. denied, 457 U.S. 1120, 102 S.Ct. 2933, 73 L.Ed. 2d 1333.

its employees vis-a-vis its home rule charter was not contested by the parties nor was it questioned by the Supreme Court in *Com. ex rel. Specter v. Moak,* 452 Pa. 482, 307 A.2d 884 (1973). See also, 53 P.S. §1-301 et seq.[5] Moreover, a home rule charter has the force and status of an act of the legislature which raises a strong presumption of its constitutionality. *Citizens Committee to Recall Rizzo v. Board of Elections,* 470 Pa. 1, 367 A.2d 232 (1976). Accordingly, in the absence of any authority to the contrary we conclude that the township had the power to make compatibility determinations with respect to its commissioners.

Consequently, we turn to the second issue that since the township did make such compatibility determinations, did they do it in a constitutionally permissible manner? The question as noted is whether these provisions unconstitutionally infringe upon the First Amendment rights of township commissioners, in particular Mrs. Buchmiller and Mr. Fabian, with respect to their right to seek and hold public office. Some infringement is permissible in this regard as the state has interests as an employer in regulating the activity of its employees so as to promote the efficiency of the public services it performs through those employees. *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed. 2d 811 (1968). The difficulty is in striking a balance

5. Section 1-301. A municipality which has adopted a home rule charter may exercise any powers and perform any function not denied by the Constitution of Pennsylvania, by its home rule charter or by the General Assembly at any time. All grants of municipal power to municipalities governed by a home rule charter under this act, whether in the form of specific enumeration or general terms, shall be liberally construed in favor of the municipality. April 13, 1972, §301.

between the sometimes competing interests of the First Amendment rights of the state employee as a citizen and the aforesaid interests of the state as an employer. Id. The test to determine the constitutionality of restrictions of First Amendment rights contemplates a two-fold burden upon the governmental unit. First, a compelling governmental interest must be shown which would warrant a restriction of the First Amendment right. *Commonwealth v. Bethea,* 474 Pa. 571, 379 A.2d 102 (1977). Secondly, the governmental unit must show that the restriction of the First Amendment activity is the least drastic means for achieving the governmental purpose. Id.; *Specter,* supra.

As to its first burden, the township contends that the subject provisions of its home rule charter serve to protect the following interests which it argues are compelling. First, public servants and employees are prevented from attaining several positions of power at the same time. In so doing, the subject provisions encourage other people to participate in township government thereby dispersing governmental power over a wider base and promoting openness in the government. Second, direct or indirect pecuniary conflicts of interests are avoided. Third, the citizens of the township are assured that their commissioners will serve with undivided loyalty and without any appearance of impropriety. In support of its contentions, that the charter limitations serve to promote compelling governmental interests using the least drastic means, the township cites several cases, among them, *Acevedo v. City of North Pole,* 672 P.2d 130 (Alaska, 1983); *Otradovec v. City of Green Bay,* 118 Wis.2d 393, 347 N.W.2d 614 (1984); *Dunn v. Froehlich,* 155 N.J. Super. 249, 382 A.2d 686 (1978); *Kaufman v. Pannuccio,* 121 N.J. Super. 27, 295 A.2d 639 (1972) cert. denied, 62

N.J. 192, 299 A.2d 726; *Haskins v. State ex rel. Harrington,* 516 P.2d 1171 (Wyo., 1973); *Rogers v. Village of Tinley Park,* 116 Ill.App.3d 437, 451 N.E.2d 1324 (1983).

Despite the lack of legislative history as to the purposes for enacting this legislation, we are confident that in large measure it was designed to promote the interests which the township argues are compelling. Further, we have no quarrel with the township that the latter two interests relied upon are indeed compelling.[6] Similar interests were so found in *Specter,* supra, a case in which the Supreme Court considered Philadelphia's Home Rule Charter which provided in pertinent part:

"No officer or employee of the city, except elected officers running for re-election shall be a candidate for nomination or election to any public office unless he shall have first resigned from his then office or employment."

The court concluded that Philadelphia had several compelling governmental interests which would justify requiring city officers and employees to resign before becoming a candidate for nomination or election for any public office. *Specter,* supra. Two of the interests found compelling were the prevention of a candidate for elective office from unduly influencing or intimidating employees under his supervision or neglecting his official duties in the interests of his candidacy. *Specter,* supra.

The fundamental issue, as we see it, is whether the charter limitation is the least drastic means to

---

6. We think the first goal—prevention of one person from attaining several positions of power—is perhaps more properly reserved for consideration by the electorate through the ballot than by charter limitation.

achieve the aforesaid compelling interests. In this respect, the several cases from other jurisdictions cited previously by the township are inapposite. Each one of those cases involved a person holding or attempting to hold two governmental offices or positions of employment within the same governmental unit. The various courts in those cases had little difficulty in concluding that the holding of such dual positions violated the doctrine of incompatibility. See e.g., *Rogers,* supra. We agree with the courts' collective rationale as each case involved a high likelihood of continuing conflicts of interest. What distinguishes the instant charter provision from the restrictions in the aforesaid cases is that the township's legislation purports to prevent not only persons holding township employment from serving as commissioner but also persons having other governmental employment.

In *Specter,* the court concluded that the charter limitations (requiring employees to resign before running for public office) was the least drastic means of acheiving the desired end. We would agree that the township charter limitation as to township employees is the least drastic means possible because as noted the high likelihood of conflict. Is the same rationale applicable to commissioners holding other governmental positions? Mrs. Buchmiller argues that abstention from voting in situations where a conflict of interest is possible is the least drastic means to achieve the township's desired end. She contends that this is clear when one considers that the alternative means a person must forfeit an elected office, or resign from his or her job. The township counters by asserting that only the present system will assure that the citizens of the township receive the undivided loyalty of the commissioners.

We find Mrs. Buchmiller's argument on balance the more persuasive. For, unlike an employee of the township who would as a commissioner be subjected to ongoing allegations of conflict (actual or perceived), thus creating substantial and continuing issues inimical to the best interests of the township and its citizens, the employee of another governmental entity would find him or herself in a potential conflict of interest situation so infrequently as to make the issue as a practical matter de minimus. Abstention on those occasions does appear to be "the least drastic means to achieve the desired end." And indeed, contrary to the township position, the citizens of Whitehall Township will have the benefit of the undivided loyalty of their commissioners except in those infrequent instances where abstention will provide an immediate and effective resolution of the problem. The alternative of forcing the commissioner to choose between serving as a commissioner and retaining his or her governmental employment would have the far more drastic and unnecessary consequence of limiting important rights of citizenship.

The Supreme Court has stated that "[w]hen constitutional powers have been exceeded by a legislature or a municipality, it is the obligation of the judiciary to preserve the fundamental law and declare contrary actions null and without effect." *Citizens Committee*, supra, 470 Pa. at 26, 367 A.2d 244. Accordingly, we are constrained to declare section 3.07 of article III of the Home Rule Charter of Whitehall Township and section 1703 of the Administrative Code of the township unconstitutional, despite the strong presumption to the contrary, insofar as they purport to restrict township commissioners from holding any compensated governmen-

tal office or employment other than as a compensated position as a township employee.

Our decision in this regard necessarily clarifies the rights of Mrs. Buchmiller and Mr. Fabian who may not be precluded from holding their duly elected positions as commissioners by the township's charter or administrative code.

### ORDER

And now, this July 14, 1986, a petition for declaratory judgment having been presented to the court in the above matter, and the court having assumed jurisdiction, after full and careful consideration,

It is hereby ordered, adjudged and decreed that section 3.07 of the Home Rule Charter and section 1703 of the Administrative Code of Whitehall Township are unconstitutional insofar as said provisions purport to restrict township commissioners from holding any compensated governmental office or employment other than compensated positions as township officers or employees.

It is further ordered, adjudged and decreed that said provisions shall not prohibit current commissioners Buchmiller and Fabian from serving in their duly elected offices.