2019 IL App (1st) 190345

Nos. 1-19-0345 & 1-19-0376 (cons.)

Opinion filed April 24, 2019

THIRD DIVISION

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| KENNETH "MOJO" MULDROW, JR., | ) | |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | Appeal from the |
| | ) | Circuit Court of |
| THE MUNICIPAL OFFICERS ELECTORAL BOARD | ) | Cook County |
| FOR THE CITY OF MARKHAM, ROGER A. | ) | |
| AGPAWA, JENNIFER COLES, RONDAL JONES, | ) | No. 19-COEL-14 |
| BRENNA HAMPTON-HOUSER, and KAREN A. | ) | |
| YARBROUGH, | ) | |
| | ) | The Honorable |
| | ) | Nichole C. Patton, |
| Respondents | ) | Judge Presiding. |
| | ) | |
| (The Municipal Officers Electoral Board for the City of | ) | |
| Markham and Brenna Hampton-Houser, | ) | |
| | ) | |
| Respondents-Appellants). | | |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion.
Justices Lavin and Ellis concurred in the judgment and opinion.

**OPINION**

¶ 1    The petitioner, Kenneth "Mojo" Muldrow, Jr., filed a petition in the circuit court of Cook County, seeking judicial review of a decision by the Municipal Officers Electoral Board for the City of Markham (Board) that his name would not be included on the ballot as a candidate for

alderman of the first ward of the City of Markham, to be voted upon in the consolidated election on April 2, 2019. The circuit court reversed the decision of the Board. The Board and Brenna Hampton-Houser, the objector who had filed the objector's petition that was sustained by the Board, appeal the order of the circuit court. For the reasons that follow, we affirm the circuit court's judgment.

¶ 2                                                    I. BACKGROUND

¶ 3          In December 2018, the petitioner filed nominating papers to have his name placed on the ballot as a candidate for election to the office of alderman of the first ward of the City of Markham, to be voted upon at the consolidated election on April 2, 2019.[1] Included within his nominating papers was a sworn statement of candidacy, in which the petitioner stated that he was legally qualified to hold the office he sought, as well as nominating petitions that had been circulated by the petitioner himself and three other individuals.

¶ 4          Hampton-Houser filed an objector's petition that challenged the validity of the petitioner's nominating papers under the Election Code (10 ILCS 5/1 *et seq.* (West 2016)). Her petition raised three objections. The first objection argued that the petitioner's statement that he was legally qualified to hold the office sought was false. Hampton-Houser contended that petitioner was not legally qualified to serve as an alderman for the City of Markham because he was currently employed as a police officer with the City of Markham Police Department, and the offices of alderman and police officer are incompatible. The second objection asserted that the three individuals who circulated nominating petitions on behalf of the petitioner, an independent candidate, had also circulated nominating petitions on behalf of established political party candidates within the City of Markham during the same election cycle, which rendered invalid

_____

[1]This court resolved this appeal via an unpublished order on March 18, 2019, and subsequently granted the petitioner's motion to publish. See Ill. S. Ct. R. 23(b), (f) (eff. Apr. 1, 2018).

all signatures on the petition sheets they circulated. The third objection challenged the validity of certain specific signatures of purportedly qualified voters on the petitioner's nominating petitions.

¶ 5       The Board was constituted to hear the objections to the petitioner's nominating papers. It was comprised of Roger A. Agpawa, Jennifer Coles, and Rondal Jones. The Board held a hearing at which the petitioner testified that he was employed with the City of Markham Police Department and had been a police officer for the City of Markham for 30 years. The petitioner further testified that he was not an elected official at the time of the hearing, and if he was elected alderman, he intended to retire from his employment as a police officer.

¶ 6       The Board voted 2-1 to sustain the objections. It issued its written decision on January 22, 2019. With respect to the first objection, the Board recognized that section 10-5 of the Election Code contained a mandatory requirement that nominating papers include a sworn statement of candidacy that "state[s] that the candidate is qualified for the office specified." *Id.* § 10-5(3). Relying on *Rogers v. Village of Tinley Park*, 116 Ill. App. 3d 437 (1983), it determined that the office of alderman of the City of Markham was incompatible with service as a police officer for the City of Markham, and therefore, "a City of Markham police officer is not qualified to hold the office of Alderman in the City of Markham." It further determined that "a candidate for office must be 'qualified' at the time the statement of candidacy is signed, sworn to, and filed." Thus, the Board concluded that the petitioner was not qualified at the time he signed his statement of candidacy or filed his nomination papers, and he was not qualified to run for or hold the office of alderman of the first ward of the City of Markham. It therefore ordered that the petitioner's name would not be included on the ballot as a candidate for that office.

¶ 7       With respect to the second objection, the Board concluded that three individuals who had

circulated nominating petitions on behalf of the petitioner had also circulated nominating petitions on behalf of established party candidates seeking elected office in the City of Markham within the same election cycle, which violated section 10-4 of the Election Code. 10 ILCS 5/10-4 (West 2016). Thus, the Board found that all petition sheets circulated by them and all signatures within those petition sheets were rendered invalid and void. Finally, the Board concluded that the third objection, which was directed at the validity of certain individual signatures on the nominating petitions, was moot based on its ruling, and no records examination of those signatures was necessary.

¶ 8       The petitioner then filed a petition in the circuit court for judicial review of the Board's decision. Concerning the first objection sustained by the Board, the petitioner argued generally that neither the Election Code nor the Illinois Municipal Code (65 ILCS 5/1-1-1 *et seq.* (West 2016)) included the incompatible-employment restriction upon which the Board had relied to invalidate his candidacy. He argued that section 3.1-10-5 of the Municipal Code defined the eligibility requirements for the office of alderman, and it did not include any prohibition on municipal employees such as police officers from running for elective office within the municipality in which they are employed. *Id.* § 3.1-10-5. Concerning the second objection sustained by the Board, the petitioner argued generally that the objector had failed to meet her burden of proof and that the circulator restriction did not apply in this case. The Board and Hampton-Houser filed briefs in support of the Board's determination.

¶ 9       On February 13, 2019, the circuit court entered an order, reversing the Board's ruling on the objection pertaining to incompatibility of office or employment but affirming the Board's ruling on the objection pertaining to the circulation of nominating petitions by individuals who had also circulated petitions on behalf of candidates of political parties. The circuit court's order

remanded the matter to the Board for further proceedings concerning the objections to the individual signatures, which the Board had previously determined to be moot. The circuit court ordered a records examination to be conducted concerning the contested signatures.

¶ 10     On February 15, 2019, the Board reconvened and ordered a records examination to be conducted. That records examination occurred on February 19, 2019. On February 20, 2019, the Board convened again to consider the results of the records examination. On that date, the Board entered a written decision that (1) attached and incorporated its previous decision issued January 22, 2019, and the circuit court's order entered February 13, 2019, and (2) confirmed that the petitioner's nominating petitions contained more valid signatures than the minimum number required by law, and thus, his nomination papers were valid.

¶ 11     On February 19, 2019, the Board filed a motion in the circuit court, stating that it had complied with the circuit court's order of February 13, 2019, in that the records examination had been completed and the Board's decision concerning the results of that records examination would be finalized on February 20, 2019. Based on this, the Board requested the circuit court to enter a final order to allow it to appeal the order that had been entered on February 13, 2019. Its motion was scheduled for presentment before the circuit court on February 25, 2019. On that date, the circuit court entered an order that (1) incorporated the order it had previously entered on February 13, 2019, and (2) recited that the Board had determined on February 20, 2019, that, based on the results of the records examination on remand, the petitioner had a sufficient number of valid signatures to appear on the ballot. That order further stated that it was final and appealable and that it was entered over the petitioner's objection.

¶ 12     Later on February 25, 2019, Hampton-Houser filed a notice of appeal, which specifically stated that only issue she sought to appeal pertained to the incompatible-employment objection

resolved by the circuit court's order of February 13, 2019. After the notice of appeal was filed, but still on February 25, 2019, the petitioner filed in the circuit court an emergency motion to reconsider the order entered earlier that day. That motion challenged the authority of the Board to file a motion seeking a final order, where neither the objector nor the petitioner sought further judicial review following the records examination. The emergency motion to reconsider also contended that the Board's motion giving rise to the order of February 25, 2019, had merely requested a finding under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) concerning the order of February 13, 2019, and requested that the court vacate all portions of the order of February 25, 2019, that went beyond the scope of relief requested in the Board's motion.

¶ 13     On February 27, 2019, the circuit court entered an order granting the petitioner's emergency motion to reconsider and vacating the order that had been entered on February 25, 2019. The order entered on February 27, 2019, also included a finding pursuant to Rule 304(a) that there was no just reason for a delay of the appeal of the circuit court's order of February 13, 2019. *Id.*

¶ 14     On February 27, 2019, Hampton-Houser filed a second notice of appeal, again indicating that the issue she sought to appeal pertained to the incompatible-employment objection resolved by the circuit court's order of February 13, 2019. On its own motion, this court ordered the two appeals to be consolidated. We also ordered that, in light of the impending election, briefing and resolution of this appeal would be expedited. Finally, we allowed the Board to adopt the brief that was filed by Hampton-Houser.

¶ 15                                   II. ANALYSIS

¶ 16     Before considering the merits of this appeal, we must first address the petitioner's argument that this appeal should be dismissed because no party sought judicial review of the Board's

decision of February 20, 2019. As we understand the petitioner's argument, he contends that the Board's decision of February 20, 2019, "superseded and replaced the initial January 22, 2019 decision, which was no longer valid." He contends that the appellants are thus appealing "an interlocutory order from the trial court, rather than seeking review of the final decision of the Electoral Board after remand." Thus, he argues, the final decision of the Board, "which incorporated and superseded the initial decision," is not properly before this court for review.

¶ 17    We reject the petitioner's argument and conclude that this court has jurisdiction to consider this appeal. First, the petitioner neither cites legal authority nor points out any portion of the text of the Board's decision of February 20, 2019, that would support the proposition that it "superseded and replaced the initial January 22, 2019 decision, which was no longer valid." Second, it is undisputed that the circuit court acquired jurisdiction to review the Board's decision of January 22, 2019, when the petitioner filed his petition for judicial review of the Board's decision pursuant to section 10-10.1 of the Election Code (10 ILCS 5/10-10.1 (West 2016)). Such proceedings are in the nature of administrative review. *Goodman v. Ward*, 241 Ill. 2d 398, 405 (2011); *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008). In typical cases of administrative review, where a circuit court remands a matter to an agency for further proceedings or findings, the circuit court retains jurisdiction of the cause after remand. *Hooker v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 391 Ill. App. 3d 129, 136 (2009). A new complaint for administrative review does not need to be filed to revest the circuit court with jurisdiction of the matter following remand. *Id.* The petitioner cites no law indicating that a different result is required in proceedings involving judicial review of a decision by an electoral board.

¶ 18    Here, jurisdiction to review the Board's decision of January 22, 2019, was acquired by the

circuit court when the petitioner filed his petition for judicial review. Pursuant to that jurisdiction, the circuit court reversed the Board's decision on the objection pertaining to incompatible employment. This required the circuit court to remand the cause to the Board for its determination on the third objection, and the action of remand rendered interlocutory the circuit court's order of February 13, 2019. *Id.* at 135-36. However, the circuit court retained jurisdiction over the entire matter until it had the opportunity to review the results of the Board's additional proceedings upon remand and to enter a subsequent order thereon if necessary. *Id.* at 136. No new petition for judicial review was required following remand, nor did the failure to file one affect the reviewability of the issue concerning incompatible employment that the circuit court had previously resolved on February 13, 2019. The circuit court expressly made a finding under Rule 304(a) that there was no just reason to delay the appeal of its order of February 13, 2019. Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). Thus, this order is properly before this court for review.

¶ 19     In this appeal, it is the decision of the Board that is under review by this court, not the decision of the circuit court. *Cinkus*, 228 Ill. 2d at 212. Also, there is no dispute concerning the facts. The issue is whether, given those undisputed facts, the Board correctly concluded that the petitioner's nominating papers were insufficient under the controlling law for his name to appear on the ballot as a candidate for alderman of the first ward of the City of Markham in the consolidated election. The parties agree that our standard of review of this issue is *de novo*. *Goodman*, 241 Ill. 2d at 406.

¶ 20     The appellants argue that the Board correctly found that the petitioner's nomination papers were invalid because he was not qualified for the office to which he sought election. The Board found a violation of section 10-5 of the Election Code, which requires that a candidate's nomination papers include a sworn statement of candidacy, which "shall state that the candidate

is qualified for the office specified." 10 ILCS 5/10-5(3) (West 2016). That section further provides that statements of candidacy "may be in substantially the following form," and that form includes a statement by the candidate "that I am legally qualified to hold such office." *Id.* The supreme court has held that the statutory requirements governing statements of candidacy are mandatory. *Goodman*, 241 Ill. 2d at 409 (citing *Cinkus*, 228 Ill. 2d at 219). If a candidate's statement of candidacy does not substantially comply with statutory requirements, the candidate is not entitled to have his or her name appear on the ballot. *Id.* If a candidate's statement that he or she is qualified for the office sought is inaccurate, the statement fails to satisfy statutory requirements and constitutes a valid basis upon which an electoral board may sustain an objector's petition seeking to remove a candidate's name from the ballot. *Id.* at 410.

¶ 21     The appellants argue that the Board correctly found that the petitioner was in fact not qualified to seek or hold the office of alderman of the first ward of the City of Markham. They argue that under the common law doctrine of incompatibility, the petitioner's employment as a police officer for the City of Markham was incompatible with the office of alderman for the same municipality. They argue that the Board properly relied upon *Rogers*, 116 Ill. App. 3d at 447-48, in which this court applied the common law doctrine of incompatibility and held that the office of village trustee was incompatible with the office of police officer.

¶ 22     *Rogers* was an action for declaratory judgment, in which the plaintiff was a police officer with the Village of Tinley Park who had run for and been elected to a position on that municipality's board of trustees. *Id.* at 438-39. Subsequent to his election, a dispute arose about whether the plaintiff's qualifying to hold the office of trustee had resulted in his automatic resignation of his position as a police officer with the same municipality. *Id.* at 439. In his action for declaratory judgment, the plaintiff contended that he had not voluntarily or automatically

resigned from his position as police officer and that he could lawfully serve as a trustee, provided he took a leave of absence from his position as police officer. *Id.* at 439-40. The defendant, by contrast, argued that the positions of village trustee and police officer were incompatible and that the plaintiff's acceptance of the position of trustee automatically resulted in his resignation as a police officer. *Id.* The trial court granted judgment in favor of the plaintiff, but this court reversed, holding that judgment should enter in favor of the defendant municipality. *Id.* at 448.

¶ 23    In its analysis, the court explained the doctrine of incompatibility as follows:

" 'Incompatibility *** is present when the written law of a state specifically prohibits the occupant of either one of the offices in question from holding the other and, also, where the duties of either office are such that the holder of the office cannot in every instance, properly and fully, faithfully perform all the duties of the other office. This incompatibility may arise from multiplicity of business in the one office or the other, considerations of public policy or otherwise. [Citations.] From these authorities it also appears that in case of incompatibility the acceptance of the second office is *ipso facto* a resignation of the first office. By his own action the officer expresses his voluntary resignation.' " *Id.* at 440-41 (quoting *People ex rel. Myers v. Haas*, 145 Ill. App. 283, 286-87 (1908)).

The court then discussed authority from outside Illinois holding that the position of police officer for a municipality was incompatible with membership on the legislative body of the same municipality. *Id.* at 442-47. This was based largely on concerns about the potential conflicts that may arise from the various financial, personnel, and oversight responsibilities that a municipal legislator would have over the municipality's police department. *Id.* Thus, the court held that the office of police officer was incompatible with the office of village trustee. *Id.* at 448.

¶ 24    The petitioner argues that *Rogers* does not stand for the proposition that an electoral board may prevent a police officer from running for alderman, based on a potential future incompatibility of office that may arise if the police officer is elected to the position of alderman. The petitioner points out that *Rogers* did not involve the action of an electoral board. Rather, it was a declaratory judgment action concerning a police officer who had run for, been elected to, and assumed the office of village trustee. The issue in *Rogers* was not the plaintiff's eligibility to be a candidate, but rather it was whether his acceptance of the office of trustee resulted in the automatic resignation of his position as a police officer under the doctrine of incompatibility.

¶ 25    This court agrees with the petitioner that the Board erred by relying on the doctrine of incompatibility in ordering that his name would not be included on the ballot as a candidate for alderman. The doctrine of incompatibility is not a means to disqualify a person from being a candidate for elective office. See *Velazquez v. Soliz*, 141 Ill. App. 3d 1024, 1032 (1986). Rather, the effect of the doctrine is that " 'the acceptance of the second office is *ipso facto* a resignation of the first office.' " *Rogers*, 116 Ill. App. 3d at 441 (quoting *Haas*, 145 Ill. App. at 286-87); see *People ex rel. Smith v. Brown*, 356 Ill. App. 3d 1096, 1101 (2005) ("defendant's election to and acceptance of the position of Kankakee city alderman was, *ipso facto*, a resignation from his position as member of the park district board"). That a person would be in a position to accept a second office, and thereby resign the first, presupposes that a person may be a candidate for election to that second office while serving in the first. Thus, any question concerning the doctrine's applicability to the petitioner will only arise if the petitioner is elected to the office of alderman and seeks to serve in that position while simultaneously continuing to serve as a police officer for the same municipality. *Velazquez*, 141 Ill. App. 3d at 1032.

¶ 26    The appellants cite no contrary precedential authority for the proposition that the doctrine

of incompatibility is a basis by which an electoral board may find that a candidate is not qualified for a particular office, thereby rendering that candidate's nominating papers invalid. The only authority cited to this effect is a decision of an electoral board of the Village of North Riverside, which took such action based upon the holding of *Rogers*. The appellants point out that this court affirmed that decision by the electoral board of the Village of North Riverside in an order entered under Illinois Supreme Court Rule 23(b) (eff. Apr. 1, 2018). Such orders are not precedential and may not be cited by any party except to support contentions of double jeopardy, *res judicata*, collateral estoppel, or law of the case, none of which are involved here. Ill. S. Ct. R. 23(e)(1) (eff. Apr. 1, 2018). It does not appear that the appeal of that case raised the issue of the propriety of the electoral board's use of the doctrine of incompatibility as a basis for removing the candidate's name from the ballot. For the reasons discussed above, we do not believe the doctrine of incompatibility provides a basis under which an electoral board may do so.

¶ 27     We find additional support for this conclusion in this court's discussion in *Solomon v. Scholefield*, 2015 IL App (1st) 150685. In that case, the court addressed a situation in which an electoral board had invalidated the nominating papers of a candidate for trustee of a community college district, based in part on its determination that the candidate held a position as an adjunct faculty member that was incompatible with service as a trustee. *Id.* ¶ 11. While the rationale upon which this court reversed the electoral board's action was that it had improperly acted on an objection not raised by the objector's petition, we further explained that even if the objection was considered to have been properly raised before the electoral board, the electoral board had nevertheless exceeded its authority by relying on incompatibility as a basis for invalidating the candidate's nominating papers. *Id.* ¶¶ 21-25. This discussion in *Solomon* supports our conclusion here that the Board's reliance on the doctrine of incompatibility was inappropriate.

¶ 28    In arguing that incompatibility may serve as a basis by which an electoral board may find that a candidate is disqualified from office prior to being elected, the appellants point out that section 10-5 of the Election Code required the petitioner to be qualified for the office he sought at the time he filed his nomination papers, as opposed to the time he is elected or assumes office. 10 ILCS 5/10-5 (West 2016). They cite *Cinkus*, in which the supreme court affirmed an electoral board's sustaining of an objection to the nominating papers of a candidate for village trustee who, as of the day he filed his nominating papers, was indebted $100 to the village. *Cinkus*, 228 Ill. 2d at 206. The objection at issue was based on section 3.1-10-5(b) of the Illinois Municipal Code, which then provided in part that " '[a] person is not eligible for an elective municipal office if that person is in arrears in the payment of a tax or other indebtedness due to the municipality.' " *Id.* at 216 (quoting 65 ILCS 5/3.1-10-5 (West 2006)). The supreme court read section 3.1-10-5(b) together with section 10-5 of the Election Code (10 ILCS 5/10-5 (West 2006)), noting that the statement of candidacy in section 10-5 was phrased in the present tense. *Cinkus*, 228 Ill. 2d at 219. "Thus, when a candidate submits his or her nomination papers to run for office, the candidate swears that he or she is—not will be—qualified for the office sought." *Id.* Accordingly, the supreme court held that "the disqualifications provided by section 3.1-10-5(b) of the Illinois Municipal Code render a candidate ineligible to run for office if not remedied by the time the candidate files his or her nomination papers." *Id.* at 219-20.

¶ 29    Based on this, the appellants argue that in this case, "as was the case in *Cinkus*, the incompatibility of offices, which forms the basis for Muldrow's disqualification, existed at the time Muldrow filed his nomination papers." We do not agree. As discussed above, we reject the premise that the doctrine of incompatibility is a basis upon which an electoral board may find that a candidate is not "qualified" for the office sought, for purposes of compliance with section

10-5 of the Election Code. 10 ILCS 5/10-5 (West 2016). Therefore, this case is unlike *Cinkus*, in which the electoral board relied on a statute explicitly addressing qualifications for elective municipal office to conclude that the candidate was not eligible to run for the office he sought. Thus, contrary to the appellants' contentions, it is not the timing of disqualification that is at issue here, but rather the absence of a law that would render the petitioner disqualified from the office sought.

¶ 30                                    III. CONCLUSION

¶ 31        For the foregoing reasons, this court affirms the judgment of the circuit court.

¶ 32        Affirmed.